MULVIHILL v. DETROIT UNITED RAILWAY.

APPEAL AND ERROR—STREET RAILWAYS—NEGLIGENCE—INFANTS.
On error, a judgment against a street railway company
for $12,500 for the wrongful killing of plaintiff's decedent,
a 20-month old boy, is affirmed by a divided court on
condition that it be remitted to $5,000.[1]

Error to Wayne; Webster (Clyde I.), J. Submitted October 29, 1924. (Docket No. 52.) Decided May 14, 1925.

Case by John P. Mulvihill, administrator of the estate of John F. Mulvihill, deceased, against the Detroit United Railway for the negligent killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Affirmed, conditionally, by a divided court.

*William G. Fitzpatrick* (*John G. Cross*, of counsel), for appellant.

*S. Homer Ferguson*, for appellee.

MOORE, J. John Francis Mulvihill, a boy 20 months old, on Sunday afternoon, June 19, 1921, received injuries by being struck by a street car, which resulted in his death. This litigation resulted. A motion to direct a verdict for the defendant was made and denied at the close of plaintiff's case. A request to so charge was also made and denied at the close of plaintiff's rebuttal. The verdict was $12,500 for the plaintiff. Motions *non obstante* and for a new trial were made and denied; exceptions taken and the cause removed to this court on writ of error. The accompanying diagram will help to explain the situation.

[1] Appeal and Error, 4 C. J. § 3139.
On duty imposed on street railroad company to avoid injuring children on the track, see note in 25 L. R. A. 663.
On excessiveness of damages for personal injuries resulting in death, see note in L. R. A. 1916C, 820.

The child and its mother were in the drug store where the mother made some purchases.   To enable her to open her purse she stood the child on the floor. Soon she heard the screen door slam and saw that her boy had passed through it.   She hurried after him, trying to overtake him, but just failed of doing so.   He ran directly across the sidewalk and into the street, and was struck by the fender of the street car and thrown under it.

The first question calling for consideration is, Should there have been a directed verdict for the defendant?   As might be expected the witnesses differed in their descriptions of what occurred.   Witnesses produced by the defendant showed that as a Cadillac automobile, running from 20 to 22 miles an hour, approached Virginia Park from the north, its occupants observed the child leave the curb, and the driver of the automobile stopped the automobile about the center of Virginia Park, at a distance of about 38 feet from the child.   Shortly before doing this the automobile had passed the street car, which was going in the same direction, and was farther away from the child than was the automobile.   The motorman testified he saw the child when it left the curb, and began to sound his gong and to apply the brake.   The testimony is that the harder he rang the gong the faster the child ran.   The motorman described in detail what he did, and testified that he did all he could to avoid the accident.   On the cross-examination he testified in part:

"*Q*. Did you drop the fender that day before you got to Virginia?

"*A*. No, sir.

"*Q*. You didn't drop it at Virginia?

"*A*. No, sir.

"*Q*. Didn't drop the fender, didn't drop that at all?

"*A*. I can't remember nothing about the fender or the sand.

"*Q.* What part of the car hit the boy?
"*A.* The right corner of the front fender."

On the direct-examination he said:

"*Q.* Now, you say you were endeavoring to ring your bell and apply your brakes, after you had seen the child, you were resting on your left foot; and operating the gong with your right foot?
"*A.* With my right foot, yes, sir.
"*Q.* And what did you have to do in order to drop the fender?
"*A.* You will have to rest on the next foot to drop the fender. Some they have on the left side and some on the right side—just a little foot handle, you know, for to drop the fender down. I cannot tell exactly what side it was, but I know you will have to rest on one foot to drop your fender.
"*Q.* Well, will you state why you did not drop the fender?
"*A.* Yes, sir; I did not drop the fender because I did not have a chance to drop it."

Then on the cross-examination he said:

"*Q.* If you drop a fender on these cars it drops clear down and nothing can get under the fender of a car?
"*A.* Yes, sir, clear down.
"*Q.* In other words, if you are coming along and this (indicating) is the street car track and my pencil—
"*A.* Yes, sir.
"*Q.* —were a child, you would drop the fender down here (indicating)?
"*A.* Yes, sir.
"*Q.* It goes clear down to the pavement?
"*A.* Yes, sir.
"*Q.* And the child would go up on top of the fender?
"*A.* Yes, sir.
"*Q.* That is true, isn't it?
"*A.* Yes, sir.
"*Q.* If you leave the fender up there is room for the child to go under the fender?
"*A.* Yes, sir.
"*Q.* And that is what happened in this case, the child went under the fender, didn't it?
"*A.* Yes, sir.

"*Q*. Now, isn't it true that all you have got to do in this car is to put your left foot on a clamp and the fender drops that (indicating) quick; it is on a spring?

"*A*. Yes, sir.

"*Q*. Yes, sir; and you used the right foot continually all this time donging on the bell?

"*A*. Yes, sir.

"*Q*. And you used the right foot continually all this time donging on the bell; and the harder you rang the bell, the harder the child ran; isn't that true?

"*A*. Yes, sir."

One might query why a competent motorman should not know where in this car the foot handle was that would drop the fender if pressed.   And the inquiry might also be made, why the motorman did not drop the fender instead of spending so much time with the gong.   There was testimony that the motorman began to apply the brakes as soon as he saw the child.

There was other testimony from a witness produced by the defendant, we quote:

"*Q*. Did you feel the power applied to the brakes when you were crossing Virginia Park?

"*A*. I will say he did; yes.

"*Q*. Well, then, he did apply the brakes before he hit the child?

"*A*. Yes, sir, he did, in the middle of Virginia Park and about in the middle of the road and put on brakes —he had the brakes on.

"*Q*. And you felt them when you were going across Virginia Park?

"*A*. Yes, sir; yes, sir; very slow then, then he started up again and the other 50 feet this child got hurt.

"*Q*. When he started out did you feel him putting on the brakes?   As he was crossing the middle of Virginia Park?

"*A*. Yes, sir.

"*Q*. And he kept those brakes on until the child was hit?

"*A*. No, no.   He loosened up the brakes and started up his right-of-way to go ahead.

"*Q.* How far away was he then from the child when he put on the brakes finally?

"*A.* About five feet when he put the brakes on for sure that he knew he was going to hit and the child was going to run across the track."

The jury was instructed over and over again that, if the motorman did all that a reasonably prudent man should do, they should return a verdict for the defendant.

The case was a border line case, but we think it presented a question for the jury. *Schoepper* v. *Hancock Chemical Co.*, 113 Mich. 582; *Woods* v. *Railway Co.*, 108 Mich. 396; *Yonkus* v. *McKay*, 186 Mich. 203 (Ann. Cas. 1917E, 458); *Bayer* v. *Grocholski*, 196 Mich. 325; *Ricketts* v. *Froehlich*, 218 Mich. 459.

Complaint is made of the argument of counsel. We do not think in the absence of an objection that we can say this argument was reversible error. *Samberg* v. *Knights of Maccabees*, 158 Mich. 570 (133 Am. St. Rep. 396); *Greenleaf* v. *Lambert*, 192 Mich. 411; *B. F. Goodrich Rubber Co.* v. *Wheel Co.*, 196 Mich. 605.

Complaint is made of that portion of the charge upon the question of damages in which reference is made to the present worth of the child's probable earnings. It is not claimed that what was said was not a proper statement, but it is claimed that the judge should have informed the jury how to compute the present worth of the probable earnings. Counsel did not prefer any request upon that subject. If they had we have no doubt the trial judge would have elaborated upon that subject.

We do not think it can be said the record presents a case where there is reversible error. The argument of counsel is the subject of proper criticism, and should not have been made, and we think is reflected in the verdict. We have a case, however, where we must consider whether the verdict is excessive. The

child lived about 40 hours after the injury.    It would be more than 19 years, if he had lived, before the child would begin to earn anything for himself.

There is no hard and fast rule for computing damages in such a case.    The question of the measure of damages in the case of young children has been before this court in a number of instances.    Some of the cases are *Love* v. *Railroad Co.*, 170 Mich. 1; *Fishleigh* v. *Railway*, 205 Mich. 145; *Swaczyk* v. *Detroit Edison Co.*, 207 Mich. 494, and *Wilson* v. *Railway*, 208 Mich. 411.

We think the verdict is clearly excessive.    If the plaintiff will remit thereof to $5,000 within 30 days after this opinion is handed down the judgment to that amount will be affirmed.    Otherwise the judgment will be reversed and a new trial granted to the appellant.

McDONALD, C. J., and BIRD and WIEST, JJ., concurred with MOORE, J.

CLARK, J. (*dissenting*).    From the curb of the street to the first rail of the track was 12.75 feet, and to the overhang of the street car a little over 11 feet.    The child leaving the curb ran into the street vigorously, quickly, so quickly that his mother, a young vigorous woman, unhampered in movement, though close to the child, was not able to catch him.    He reached the point of overhang in an instant, a second or two.    He was caught by the end of the fender and thrown under the car, which was stopped just as the wheel reached his body.    The flesh was torn, but no bones were broken.

The motorman first saw the child as he left the curb.    The overwhelming weight of the evidence is that at this instant the street car was distant approximately 30 to 35 feet proceeding at about 10 to 12 miles per hour.    In that brief time, the motorman

sounded the gong, shut off the power, applied the brakes, put the car in reverse, and then turned on the power. He stopped, according to the great weight of the evidence, in about a car length. He did not sand the rails nor lower the fender. The undisputed evidence is that sanding would not have helped, the rail being dry. And it is undisputed that the motorman did not have time to do more than he did. There was sudden emergency, a brief instant for action. For the mind to perceive the danger and the need for action, for the muscles to respond to the direction of the mind, and for the machinery to respond to the muscular movements, appreciable time is required. *Griewski* v. *Light Co.*, 209 Mich. 10. There can be no just criticism of what the motorman did or did not do in that brief instant and no negligence can be predicated upon his conduct in this regard. *Coessens* v. *Railway*, 136 Mich. 481.

An inference of negligence can be drawn from the mother's testimony. She places the car as 110 feet distant instead of about 30 or 35 feet. If she is right, then the car, to reach the point of impact in that brief time, must have been traveling at a very high and dangerous rate of speed. But this inference is overwhelmed by the other evidence in the case.

The verdict is against the great weight of the evidence. Judgment should be reversed, and a new trial granted.

Sharpe, Steere, and Fellows, JJ., concurred with Clark, J.