YELLOW CAB CO. v. LUCIA GATTUSO, Administratrix.

Western Section. December 6, 1929.

Petition for Certiorari denied by Supreme Court, March 15, 1930.

Wilson, Gates & Armstrong, of Memphis, for plaintiff in error.

Holmes, Canale, Loch & Glankler, of Memphis, for defendant in error.

OWEN, J.   Lucia Gattuso, Administratrix of Petrina Gattuso, recovered a judgment against the defendant for $10,000 for the alleged wrongful death of her decedent, a daughter of the administratrix seven years of age.

The suit was originally instituted against the defendant and the Patterson Transfer Company.   The case was dismissed before trial as to the defendant, Patterson Transfer Company.

The plaintiff alleged that the defendant negligently and wrongfully ran one of its cabs or automobiles upon and over the body of decedent on February 15, 1927, on Butler avenue in Memphis, Tennessee.

There was a plea of not guilty, a plea of contributory negligence and also a plea that the child, at the time of its death, was violating a city ordinance as it was crossing the street when struck, not at the street crossing but was guilty of what is generally known at "Jay Walking."

It appears there have been two trials in this case, the first resulted in a mistrial; after the verdict was rendered at the last trial the defendant seasonably filed a motion for a new trial, this was overruled, the court suggested a remittitur of five thousand ($5000) dollars. The plaintiff accepted, under protest, and has assigned error as to the court's action in ordering the remittitur.   The defendant duly appealed, has signed and filed a proper bill of exceptions and has assigned fourteen errors.   These errors will be grouped into four groups.

Under the first group is assignment number ten which complains of the court excluding certain testimony offered by the defendant, by the witness Wade, the driver of the defendant's taxicab at the

time of the accident. The question asked the witness was as follows:

"Was there anything you could have done that you did not do to avoid the accident? A. No, sir."

It is insisted that this was error and in support of this assignment the defendant relies upon the case of Kennedy v. Railroad, 2 Hig. 103.

As to the second group of assignments, they all complain of certain excerpts delivered in the court's general charge and they are assignments, Nos. 1, 2, 3, 4, 5, and 8.

The third group complains of the court's refusing special requests offered by the defendant and these are covered by assignments 6, 7 and 9.

By the fourth group, the complaint is made that the verdict is excessive and that the judgment is excessive after the remittitur. This group embraces assignments 11 to 14 inclusive.

There is no assignment that there is no evidence to sustain the verdict. We will make a brief statement of the facts surrounding the accident.

About 3:30 on the afternoon of February 15, 1927, the decedent, a bright, intelligent little girl seven years of age was observed standing on the north curb of Butler avenue, near a driveway that leads from Butler avenue north. Her widowed mother, the administratrix, lived on the south side on Butler avenue and almost opposite from where the child was first observed. The decedent was seen to leave the north curb on Butler avenue and go directly south hurriedly, in a trot or run, as stated by these witnesses. A cab owned and operated by the defendant, and conveying a passenger, at the time, was being driven east on Butler avenue. This cab was near the center of Butler avenue. Butler avenue is forty feet wide, the cab was going at the rate of fifteen or twenty miles an hour. There was a parked automobile on the north side of Butler avenue, west of where the child was observed to be standing just before she left the curb. When the child reached about the middle of the street, she was struck by the front of the cab, the cab knocked her down, a portion of her hair was caught under the wheel and it was necessary to push the cab back to pick up the child. The child never regained consciousness and died shortly after being struck.

It was plaintiff's theory and there is proof to support it, that the driver of the cab, at the time of the accident, was using but one hand on the steering wheel and was looking backward like he was talking to his passenger. No horn was blown, the emergency brakes were applied as soon as the child was struck and the cab skidded some three feet. There was proof that this cab was some seventy-five feet from the child when the child first entered the street, attempting to

cross and that the parked automobile on the north side would not interfere or obstruct the driver's view.

It was the theory of the defendant that the child ran out from behind the parked automobile directly in front of the cab; that the driver did not have time to sound the horn or give any alarm but that he applied the emergency brake and did everything he could to avoid the accident; that it was an unavoidable accident.

The jury has resolved this conflict in favor of the plaintiff.

The first assignment to be disposed of is No. 10, which complains of the exclusion of testimony. We are cited to page 227 of the record as to where this evidence can be found. That page of the transcript refers to the motion for a new trial, however, we have read the entire record, especially the evidence of the witness, Wade, the driver of the Yellow Cab at the time of the accident, and while the trial judge ruled that it was incompetent to ask the question and give the answer complained of, yet, this witness was permitted to testify to certain facts and to certain things that he did do to avoid the accident and he testified without objection. Immediately following the sustaining of the objection the record shows that counsel for the defendant asked this witness, Wade, the following:

"Q. Could you have stopped—was it possible to have stopped your car any more quickly than you did under the circumstances? A. No, sir.

There was no objection to this question or answer. Furthermore this same witness, in another part of his testimony, made answer to the following questions:

"Q. What happened when she ran out from behind the parked car? A. Well, as soon as I saw her I applied the brakes, and stopped as soon as I could. Just as I stopped the car knocked her down, I never did run over her.

"Q. Which brakes did you apply? A. Both the foot brakes and the emergency—both.

"Q. Did you apply them as soon as you saw her, or after you saw her, or when? A. As soon as I saw her."

We have examined the case of Kennedy v. Railroad Company, 2 Hig. 103, relied upon in support of this assignment. That was a suit brought by an administratrix for the wrongful death of her husband who was killed upon a railroad crossing. The Railroad Company was endeavoring to show that it had complied with the statutory precautions. There was a directed verdict in favor of the Railroad Company, this was reversed by the Court of Civil Appeals and on the appeal it was assigned as error that the court had permitted incompetent testimony as follows:

The engineer in charge of the train was asked at the trial the following question:

"Q. Did you do all in your power to stop the train and prevent the accident? A. There was nothing to be done that I did not do to prevent the accident and stop the train."

This was objected to on the ground that the witness was giving an opinion, the objection was overruled. On appeal, Mr. Justice Hughes, for the court said: "The witness had already stated that on seeing deceased approaching the track he had sounded the alarm whistle, rang the bell and put on the emergency brakes, etc., and had shown that in fact there was nothing else left for him to do as he had already shown the facts as to what he did do. We see no objection to his statement that he did all he could do."

In the instant case the defendant got the benefit of the question and answer complained of. If the court had permitted the question and answer, it would have been a mere repetition of what the witness had in substance already testified. The question and answer complained of was never withdrawn from the jury. We find that the defendant was not prejudiced, in our opinion, by plaintiff's objection being sustained as to this evidence. It results that this assignment is overruled.

We will next dispose of group No. 2, which complains of the court's charge. The complaint is made, first, that the court allowed the jury to find for the plaintiff, that is it found that the defendant was guilty of negligence which caused the accident, regardless of whether this negligence was pleaded in the declaration, it is next insisted that the court incorrectly stated the law as to negligence; that by the charge the court allowed the jury to find for the plaintiff if it finds the defendant guilty of any of the acts mentioned in the plaintiff's declaration and regardless of whether any one of them was the proximate cause of the injury and death of plaintiff's decedent.

The third assignment makes practically the same complaint as the second.

The fourth assignment complains of that portion of the court's charge dealing with the measure of damages to be the compensation to the survivors for the loss of services of the deceased.

The fifth assignment complains that the court incorrectly instructed the jury that the value of services of the deceased constitute the measure of damages. This assignment is based on the statement of the court in answer to the the question of a juror which is as follows:

"A Juror: Well, Judge, I would like to know if there is any scale of figuring, if it is found necessary to do so, the value of the child's services; what would be a reasonable scale to go by?

"The Court: That is a matter for the jury, not for the judge. There is no law except that you must use your best judgment in

ascertaining what would be probably the length of life of the child and probable value of his services.''

The eighth assignment complainst of the court using the word ''should'' instead of using the word ''must.'' The court stated to the jury that:

''If however, you find that the driver was guilty of negligence, and that the child was guilty of negligence, but that the child's negligence after it had been committed, running into the street, was not the proximate cause, but was the remote cause, then the plaintiff can recover but the damages should be reduced on account of the remote negligence of the child.''

It is insisted that it was mandatory upon the jury to mitigate the damages if they found that the child's negligence was the remote cause of the accident and that damages should be reduced on account of the remote negligence of the child left it to the jury and was not mandatory. If the jury found that the child was guilty of remote negligence then the jury had no discretion in mitigating the damages and that the court should have charged that the jury must consider remote contributory negligence in mitigation. In support of the eighth assignment counsel cites the following Tennessee cases: Railroad v. Cheatham, 118 Tenn., 162; Railroad v. Page, 153 Tenn., 84; Railroad Co. v. Martin, 113 Tenn., 226; Railroad Co. v. Haynes, 112 Tenn., 715.

Counsel submitted a special request, known as No. 3, at the conclusion of the court's charge wherein he was requested to charge as follows:

''If you believe that the child was guilty of negligence which contributed remotely and not proximately to her injuries and death, then you must mitigate or reduce any amount of damage which you might otherwise award plaintiff by such remote contributing negligence.''

The court in refusing this special request stated, ''Given I think.'' This assignment No. 9 will be disposed of with assignment No. 8.

The first three assignments of error insist that the charge of the trial court was such as to permit a recovery by the plaintiff for acts of negligence not specifically alleged in the declaration and that the court failed to properly charge as to the proximate cause. As counsel has discussed these three assignments together under one head, we will dispose of them in like manner. We find that the court charged fully as to negligence, proximate contributory negligence and remote negligence. The court also instructed the jury as to the various allegations or acts of negligence alleged in plaintiff's declaration, and after enumerating the same the court stated, ''Now if you find those things, or any of them, to be true, from the evidence proved in this case, the defendant is liable.''

The court also instructed the jury as to the burden of proof being on the plaintiff to make out her case, by a preponderance of the evidence the court instructed the jury as to the weight of the evidence, etc. We find no error in the court's charge as complained of in assignments 1, 2 and 3.

Assignments 4 and 5 complain of that portion of the court's charge relating to the measure of damage. There was proof in the record that the child was seven years of age, in good health, robust and very intelligent, active and a great assistance to her mother in and about the household duties. We are of the opinion that the court committed no error as to the measure of damages. Assignsignments 4 and 5 are overruled.

Assignment No. 6 complains of the court modifying a request as to the credibility of witnesses. The request is as follows:

"Gentlemen of the jury, if you believe from the evidence that any witness has deliberately testified falsely to any material fact, then you are at liberty to disregard the testimony."

The court added the following to this special request:

"But differences between witnesses and contradictions about estimates and distances and time do not reflect upon the credit of the witness. This instruction that I have given you means that if you believe any one intentionally and knowingly about any material fact undertook to falsify, you would be justified in not considering his testimony at all."

The complaint of the modification to this special request is to the effect that the court should not have told the jurors that differences as to the estimates placed upon distances and time do not reflect upon the credibility of the witnesses. Differences of time and distance might reflect upon the credibility of the witnesses but under the facts as developed in this law suit we find that there was no error in making the modification to the request. The jurors were the sole judges of the weight and credibility to be given to each and every witness, and the court told the jury that if they should believe that any witness intentionally and knowingly testified falsely, then the jury would be justified in ignoring such testimony. After a witness is impeached by material contradictions or physical facts or impeached as to character, for truth and veracity, it does not necessarily destroy such witness' evidence. The sixth assignment is overruled.

By the seventh assignment it is insisted that the court erred in refusing the following special request:

"If you believe from the evidence the child was guilty of any negligence which contributed proximately, no matter how slightly, to her injuries and death your verdict should be for defendant."

It is argued that the court should have granted this special request, that any negligence, no matter how slight, would bar the plaintiff's recovery, if it was found that the decedent's negligence, no matter how slight, was the proximate cause of the accident, citing Bejach v. Colby, 141 Tenn., 693. What the court did say in regard to contributory and remote negligence was as follows:

"The difference, gentlemen of the jury, betweent remote contributory negligence and proximate contributory negligence is this: Proximate contributory negligence bars a right to any recovery at all. Remote contributory negligence has the effect of reducing the amount that otherwise would be recoverable in the case. The difference between the two is this: A person may place himself, negligently place himself in a position of danger, and then if the other person who inflicts the injury has an opportunity, a reasonable opportunity to avoid the injury after the negligent act of the plaintiff has been committed, and fails to use reasonable care to avoid the injury, he would be liable, but the negligence of the plaintiff would be remote, and it would result in a reduction of the damages otherwise recoverable. But if the negligence of both occurred directly to produce the injury, and there would be no chance after the negligence of the plaintiff had been committed for the defendant to avert the injury, then that would be proximate contributory negligence and would bar a right to recover. Now that, gentlemen, that I just had to say, bears upon the question of negligence, or contributory negligence rather, of the plaintiff's intestate, and in no event, whether the child was negligent or not negligent, in no event is the defendant liable unless you find that the driver of the car was guilty of negligence in colliding with her."

The court told the jury that the proximate contributory negligence bars the right to any recovery at all and this would cover any negligence, no matter how slight, if that negligence was proximate contributory negligence and while the court did not use the word "must" in telling the jury that if they found the decedent guilty of remote negligence the verdict must be reduced but used the words should be reduced on account of the remote negligence of the child, it is insisted that the authorities heretofore cited in support of assignment No. 8 sustain the contention that the trial judge should have instructed the jury in regard to remote negligence; that it is mandatory on the jury to reduce the damages. Our Supreme Court has said that a trial judge should not use the words "may reduce the damages" because that leaves it within the discretion of the jury as whether or not there shall be any reduction after finding that the plaintiff's negligence was remote and was not the

proximate cause of the injury. The court in this case did not use the word "may" but used the word "should," which word carries with it an imperative or mandatory duty, furthermore, he told the jury that if they found decedent's negligence was remote that would result in a reduction of the damages, otherwise recoverable. While the word "must" might carry a little more weight in telling a person that they must do a thing instead of telling them they should do a certain duty but when you tell that person that he should do a certain duty and the result of the duty performed would be what you intended should be done, we are of the opinion that the word "should" would be construed by the ordinary person in the same manner as if the person commanded to do a duty had been told they must do that and when the duty was so performed the result would be the same as when told he should do his duty. We do not think the use of the word should for must is reversible error. It results that the eighth and ninth assignments are overruled, that brings us to the question of the verdict being excessive.

Learned counsel for defendant has cited the case of Riley v. Salt Lake Rapid Transit Co., 10 Utah, 428 in which a $5000 judgment was reduced to $3000, for the death of a seven year old boy. We have no fixed rule for awarding damages for personal injuries or for the wrongful death of a person. The damages for personal injuries, mental suffering and wrongful death cannot be computed by any exact mathematical calculation. Cases may be found and cited wherein a court of last resort has found $5000 as excessive for the death of a seven year old child, on the other hand cases may be found and cited where the court of last resort, of a different state, has upheld a verdict for $10,000 and ruled that such a verdict was not excessive for the death of a seven year old child. Cases cited from various states on the question of verdicts being excessive or not excessive are not binding upon this court. Authorities are divided and but little weight should be given to the opinion of any court of last resort coming from another jurisdiction as to what is an excessive verdict and of what is not. The trial judge was not satisfied with a verdict for $10,000 and he reduced the verdict to $5000. He approved a verdict for $5000 and we are of the opinion that $5000, in the instant case is not excessive. It results that all the assignments of error offered by the defendant are overruled and disallowed.

As to the assignment of the plaintiff that the trial court was in error in ordering a remittitur and that the first verdict should be restored, plaintiff's counsel has cited authorities wherein a judgment for $10,000, for the death of a seven year old boy, was held not to be excessive but we have not been cited to any authority, whereupon on appeal the remittitur ordered by the trial court has been restored.

118

It is the duty of a trial judge to approve a verdict or grant a new trial. The trial judge in the instant case could only approve a verdict of $5000, otherwise he would have granted a new trial. He could not conscientiously approve of a greater verdict than $5000. The trial judge had all the parties before him, face to face, he saw all the witnesses, observed their demeanor while testifying and evidently the trail judge was of the opinion that the jury did not mitigate or reduce their verdict sufficiently on account of decedent's remote negligence.

We are of the opinion that under the facts of this case and as we understand the record, this remittitur ordered was a proper one and the trial judge's direction should be upheld. It results that plaintiff's assignment of error is overruled. There is no error in the trial of the lower court and the judgment of the lower court is affirmed.

The plaintiff will recover of the defendant the sum of $5000 with interest thereon from the date of the rendition of the judgment in this case in the lower court and all the costs of the cause for which execution will issue. Execution will issue against the defendant and his surety on appeal bond for the costs of the appeal.

Heiskell and Senter, JJ., concur.