Robert O'Connor, an Infant, by Arthur O'Connor, His Guardian ad Litem, and Another, Plaintiffs, *v.* Kulerban Holding Corporation, Defendant.*

Supreme Court, Bronx County, June 5, 1933.

*Charles F. McGrath*, for the plaintiffs.

*Harold M. Phillips*, for the defendant.

McLaughlin, J. The complaint alleges two causes of action. The action brought by the infant is to recover damages for personal injuries sustained by him.

---

* Affd., 240 App. Div. 547; affd., 265 N. Y. ——.

The action brought by Arthur O'Connor is to recover for medical expenses occasioned by reason of the injuries sustained by his infant son. This case was originally set for trial by jury, the jury was waived and counsel for both parties stipulated that the cause be tried by the court without a jury, and waived the making of findings of fact and conclusions of law.

In determining the issues involved here the court as the trier of the facts is limiting itself to the charge that the defendant negligently maintained a fence in a yard where it permitted and in fact directed the infant plaintiff to play. The court has entirely eliminated any theory based upon alleged attractive nuisance. The testimony is overwhelming to the effect that this fence was maintained for a long period of time in a negligent manner.

I think the child had a right to play in the yard; that it was the duty of the defendant to keep this fence in a condition that would prevent any one from falling into the next yard, the level of which was about eighteen feet lower; that the infant was not guilty of contributory negligence in assuming that the fence would resist the force of a nine-year old child leaning against it to look over. To maintain a fence which would not prevent the fall into the next yard in such circumstances would be negligence on the defendant's part.

The only serious contention urged by the defendant is that it was physically impossible for the accident to have occurred in the manner that the infant plaintiff claims it did.

Two witnesses for the plaintiff, the infant plaintiff and Mrs. Dilg, gave their estimates of the height of the fence as about fourteen inches with the boards on the top of the fence removed as it is claimed. After all this is but an approximation and I am inclined to the more accurate determination of the height by the illustration of the infant plaintiff himself in which he said that the wooden fence over which he fell was only up to his chest. He also said he could have stepped over this fence had he wished.

While there may be isolated portions of the testimony that apparently sustain the contention of the defendant that it was physically impossible for this accident to happen in the manner described by the infant plaintiff, nevertheless, a reading of the entire record convinces the court that the accident occurred by this fence swaying so much when the plaintiff ran and leaned against it with his hands extended to the top of it. The plaintiff testified that " I ran towards the fence to see where it was [meaning the rubber-band gun] and I reached up and leaned against the fence and it started swaying and I went over head first."

The plaintiff testified: " Q. How far did it sway? A. Well, about a foot and a half. Q. And when it swayed a foot and a half over what happened to you? A. Well, my hands that were gripped on the fence started letting loose and I lost my balance." Previously the infant plaintiff testified: " A. When the boy threw the gun over the fence I ran toward the fence and put my hands on the top of the fence and I leaned against it to see where it went, and the fence started swaying and I lost my balance and I fell over."

From this *resume* it is quite apparent that the boy ran towards the fence, leaned against it, placed his hands on the top of it to look over. It swayed and he fell to the yard below. The defendant contends that this was physically impossible because the fence swayed only a foot and a half in both directions. It might be noted here that there is no testimony whether the fence leaned inwardly or was in an upright position when the plaintiff leaned against it. There is testimony that as far back as a year and a half before the accident this fence did sway over a foot and a half at least, if not two feet. The same witness testified that at the time of the accident she saw the boy fall over the fence, and that she ran right out of her apartment, and the fence swayed at quite an angle and *more* than it swayed before.

The defendant relies upon mathematical calculations which are based upon the assumption that with measured steps the infant plaintiff approached the fence, leaned against it and placed his hands upon the top. Such an assumption does not take into consideration the manner in which this boy acted. He was running. This presents an entirely different picture. The court deals with probabilities. These point to the fact that the plaintiff ran in such a manner that when he placed his hands on the top and leaned against the fence, it was all one continuing act. No calculation of the defendant deals with the resulting momentum that was present. Such a situation certainly shows that the accident did happen as claimed by the plaintiff and nullifies the defendant's contention.

Reading all of this testimony together, it certainly was not impossible for this accident to happen as claimed by the plaintiff. The court is impressed with the truthfulness of the infant plaintiff and this witness, Mrs. Alberta Dilg. I am aware of the testimony of the two witnesses for the defendant, but I am not impressed with this testimony. It cannot be accepted. The testimony of the eye-witness, Mrs. Dilg, is convincing as to the manner in which the accident happened, and as to the dangerous and defective condition of this fence.

The same may be said as to the medical testimony in this case. It is quite clear that the boy received a fratured skull and the evidence of the defendant's physician to minimize or negative it is worthless. The infant plaintiff sustained a fracture of the right side of the skull.

Accordingly, I direct a verdict in favor of the infant plaintiff, Robert O'Connor, in the sum of $3,000, and a verdict in favor of Arthur O'Connor in the sum of $75.

Exception to the defendant. Thirty days' stay of execution and sixty days to make a case allowed.