Rose Keenan, as Administratrix, etc., of Howard Keenan, Deceased, Plaintiff, *v.* Lawyers Mortgage Company, in Rehabilitation, and Others, Defendants.

Supreme Court, Trial Term, Bronx County, November 18, 1937.

*L. W. Silverman* [*S. L. Sargent* of counsel], for the plaintiff.

*James A. Hughes* [*H. R. Marvin* of counsel], for the defendants.

Church, J. The plaintiff's intestate, a boy between four and five years, resided with his parents, who were tenants in an apartment house known as No. 1135 Anderson avenue, borough of the Bronx, New York city. Appurtenant to the premises were two outer courts, each running back into the lot from the sidewalk. Access to each of the courts from the sidewalk was had through gates abutting on the sidewalk. The gates were attached to and

supported by cement posts set into the ground. While the intestate, in company with the son of the superintendent, was swinging on one of these gates the cement post to which it was attached suddenly toppled over upon him and crushed him to death on September 24, 1933, in the early afternoon. It was undisputed that the anchorage of the post, by having too short a dowel pin, was defectively constructed in 1928, for the then owner, some one other than the defendants. It was testified that the post which fell was shaky, the crack at its base being about five inches long and about one-sixteenth to one-eighth of an inch in width, and this condition was observed for several months prior to the accident. The other post, although there was no testimony of any external appearance of the condition observed as to the post that fell, was similarly defective in construction, as indicated by the test of the superintendent himself alone pushing it over after the accident. The gate on which the intestate and the son of the superintendent were swinging had a bolt but no lock, and sometimes it was found open. The superintendent testified that the gate was kept bolted, and that he, in using the court, would not ordinarily use the gate, but would jump over the balustrade attached to the post in going in and out of the court leading to quarters reserved to him. Children were accustomed to playing on the sidewalk where these gates abutted. The superintendent testified that he had chased children from the court, balustrade and sidewalk on other occasions, but not specifically as to the intestate. The post, according to the son of the superintendent, who was called as a witness by the defendants, fell outwardly and crushed the intestate on the sidewalk, although there was testimony that the gate fell inwardly, but part of the body of the intestate was on the sidewalk. The defendant called several witnesses as to inspections that were made, and the court submitted to the jury the question whether a reasonable inspection would have disclosed that the gate or post was in an unsafe condition and whether the defendants exercised reasonable care in the inspection and maintenance of the premises, and whether there was any contributory negligence on the part of the deceased. The jury brought in a verdict for $7,500 for the plaintiff.

The defendants contend that as a matter of law the plaintiff's intestate was a trespasser, or at best a licensee, and that the defendants owed only the duty of refraining from willful or wanton negligence. They contend that the complaint should have been dismissed, or at least that the jury should have been charged as a matter of law to that effect.

The brief of the defendants contends that the law is: " In the present case had the post fallen into the street or onto the sidewalk,

the rule of *Mullen* v. *St. John* (57 N. Y. 567) would be in point, and the defendants would have owed the decedent the duty of reasonable care."

Although there is evidence introduced by the defendants that the post did fall into the street and crushed the intestate to death, it is inconceivable that the law of this State applies the narrow rule, as contended for by the defendants, that, if the post fell away from the sidewalk into the court of the defendants, they are not liable, especially with reference to the son of a tenant of the building killed while swinging on a gate between the public sidewalk and the court in company of the son of the superintendent in charge of the building. (See *Jaked* v. *Board of Education of City of Albany*, 198 App. Div. 113; affd., 234 N. Y. 591; *Mendelowitz* v. *Neisner*, 258 id. 181; *O'Connor* v. *Kulerban Holding Corp.*, 152 Misc. 864; affd., 240 App. Div. 957; affd., 265 N. Y. 461; *McCloskey* v. *Buckley*, 223 id. 187, citing with approval, *Harrold* v. *Watney*, [1898] 2 Q. B. 320, 324.)

The motions of the defendants to dismiss the complaint are denied with appropriate exceptions.

The defendants also move to set aside the verdict and for a new trial as being against the weight of the evidence for alleged errors in the charge and as being excessive.

The jury were called upon to pass on the tesimony and credibility of the witnesses, and their determination of the facts under the law as laid down by the court should not be disturbed.

As to the charge, no proper request was made under the evidence to submit to the jury any issue of fact of the plaintiff's intestate infant son being a trespasser or at best a licensee, and there was no issue of fact as to his being a trespasser or licensee under the evidence which could have been properly submitted under the authorities which have been cited.

As another error in the charge the defendants say: " Decedent was but four and one-half years of age. The mortality tables do not compute the probability of life of children under ten years of age. It is a matter of common knowledge that this is because the life of a child under the age of ten years is so uncertain, so subject to numerous childhood diseases and accidents, that it is impractical to attempt to estimate it. The court charged the probabilities of this child under the mortality tables after he reached the age of ten. This we contend is error. '

The defendants misstate the facts. The American Experience Table of Mortality does not give any expectancy of life for a child under ten. The court charged that the jury must consider the probability of life in determining damages, and that the expectancy

of life for a child of ten is about 48.72 years, but repeated on exception by the defendants and request that mortality expectancy had no application until a child arrives at ten because of the uncertainty of life up to the age of ten, that the jury must consider the probability of life. If it is the contention of the defendants that a child of four and one-half years has no expectancy of life, then the damages for his death would seem to be limited to the funeral expenses, in this case about $300.

According to the tables appearing in Cahill's New York Civil Practice Act (7th ed. p. 1435) the Carlisle tables give the expectancy of life for a boy of four to be 50.76 years, and of five to be 51.25 years, and the English life tables 49.81 and 49.71, respectively. There was no error in the figure of expectancy, as the court gave the expectancy at about 48.72 years, which was less than the figure given in the tables. In prior cases before the court in the cases of infants under the age of ten years counsel have courteously stipulated as to the expectancy of life, but in this case the counsel for the defendants have not followed this procedure, and did not submit any figure of expectancy from any table.

The defendants further contend: " We respectfully urge that in view of the fact that this was the first experience as jurors of the seven women therein that the court should have more fully charged them on the law of damages as applicable to this case. While it is true that juries must speculate in assessing damages in this type of case, there are numerous rules of law which should guide them, and these rules should have been charged. The jury, we contend, disregarded the rules that were charged."

The court does not share with the defendants their opinion of any inexperience, unintelligence or ineptitude of the women or men who served on the jury, nor did the defendants except at the trial to the inadequacy of the charge on damages beyond the error claimed as to expectancy of life. The jurors have assessed the damages under the evidence (pecuniary loss to the next of kin based on the expectancy of life at the average rate of approximately $150 per year), and the court cannot say as a matter of law that the verdict is excessive or agree with counsel for the defendants that the compensatory loss is $300, the amount of the funeral expenses.

The motions of the defendants to set aside the verdict and for a new trial are denied, with appropriate exceptions.