Argued November 2; affirmed November 23; rehearing denied
December 21, 1943

## LANE *v.* HATFIELD ET AL.

(143 P. (2d) 230)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Custer E. Ross,* of Salem (Ross & Lewelling, of Salem, on the brief) for appellants.

*W. W. McKinney* and *Wallace P. Carson,* both of Salem (W. W. McKinney and Carson & Carson, all of Salem, on the brief) for respondent.

KELLY, J. The tragic collision with which we are here concerned occurred about four and a half miles south of Salem upon a highway known as the Skyline road which runs in a general northerly and southerly direction. Mr. and Mrs. Harold Lane, the parents of plaintiff's decedent, Alice Marie Lane, lived on the

easterly side of this road. Their mail box was on the westerly side two and a half feet west from the pavement. At the foot of and on the westerly side of the post supporting the mail box was a small wooden box in which milk bottles were deposited for a customer. On the easterly side of the pavement and about opposite the mail box a roadway to the Lane premises entered the Skyline road. From a point several hundred yards southerly from the mail box going in a northerly direction to some distance beyond the mail box the Skyline road was upon a descending grade and was straight and even with no obstructions to the view.

On the 10th day of June, 1940, at about 7:20 or 7:30 p. m., defendant, Mark Odom Hatfield, while driving a Chrysler sedan belonging to his mother and with her consent, collided with plaintiff's decedent. As a result of the collision, plaintiff's decedent died. The Chrysler automobile was being driven in a northerly direction on the easterly side of the pavement and plaintiff's decedent was struck by the right front fender and headlight of defendant's automobile. There were only three persons present, namely, defendant, Mark Odom Hatfield, Doris Lane, an older sister of decedent, and decedent. At the time of the accident, Doris Lane was eight years old.

Doris testified that a few minutes before the accident, at the instance of her mother, she had taken a bottle of milk and decedent had taken another bottle of milk to place in the small box at the foot of the mail box post on the westerly side of the Skyline road. Doris placed the bottle, she had carried, in the box and recrossed the Skyline road. The decedent had followed Doris, had disposed of the bottle she had carried and in recrossing the Skyline road had reached the easterly

side of the pavement and was in the act of stepping off of the paved portion of the road when the automobile struck her.

The defendant, Mark Odom Hatfield, testified that he did not see the mail box, and that he did not see the decedent.

We quote from his testimony on direct examination:

"Q Then as you proceeded further down the road, Mr. Hatfield, what happened?

A I got approximately opposite the Lane mail box, and like a streak of light or something, just a swish, a streak across my eyes, I didn't see a thing at all, but I noticed this streak like a flash of light, you might say, and then—Mr. Carson: You say a flash of light?

A I guess, then I heard a noise, and even yet I could not feature what had happened, because it happened so fast. That is entirely what happened, first a swish or flash across my eyes, that is what occurred."

We also quote from the testimony of this defendant upon cross-examination:

"Q You desire to be understood as saying you couldn't see the little girl that was killed because of the grass around the mail box?

A Yes, I didn't see her at any time.

Q And it was because of the grass, you couldn't see through or over the grass?

A I could not see through the grass, I could not see over the grass, I didn't see any mail box there at all."

Photographs were introduced by defendants as correct representations of the scene of the accident.

One of the photographs, known to this record as defendants' exhibit C, is a picture of the portion of the Skyline road as it appears to one looking northerly

from a point some distance southerly from the Lane mail box. This shows that the mail box is in full view. The undisputed testimony is that the decedent was slightly taller than the mail box.

There is no testimony sustaining defendants' allegation set forth in their answer to plaintiff's amended complaint:

"That said mail box was placed in, and entirely surrounded by, thick, tall grasses; that on account of said thick and tall grasses so growing and being at and about said mail box and of said Alice Marie Lane being concealed therein, said defendant was unable to, and did not, observe her presence."

We are convinced that this is not a case where the victim darted out from a place of concealment into the path of an oncoming automobile.

■ Defendants' first assignment of error is based upon the reception in evidence of a pair of bloomers of the same material and design as the dress worn by decedent when she was struck by defendants' automobile.

One of the specifications of alleged negligence set forth in plaintiff's complaint was the failure of the driver of the car to keep a proper lookout.

The decedent's mother testified that when decedent was struck, she was wearing a light dress with white collars. and cuffs. She also testified that the dress was old and had sun faded. The bloomers that were introduced in evidence were not worn by decedent when she was struck. The child's mother testified that the bloomers matched the dress, except that the dress was faded even lighter. We think that there was no abuse of discretion on the part of the learned trial judge in receiving this exhibit and permitting its intro-

duction in evidence upon the question whether by maintaining a proper lookout the driver of the automobile would have seen decedent.

No claim was made that the garment was worn by decedent at the time of the accident. No blood stains, or other evidence of violence were upon it. In a word, it was not at all gruesome or of a nature to arouse the sympathies, resentments, indignation or prejudice of the jury. Even if it were, it would not necessarily have been an abuse of discretion to receive it in evidence because it was material to the issue whether decedent could have been seen by the driver of the automobile. *State v. Nelson*, 162 Or. 430, 92 (2d) 182; *Carmine v. Tibbetts*, 158 Or. 21, 25, 36, 74 P. (2d) 974; *State v. Weston*, 155 Or. 556, 64 (2d) 536, 108 A. L. R. 1402.

■ The second assignment of error presents the question whether improper argument by counsel for plaintiff was permitted by the court. Plaintiff's counsel stated in the closing argument:

"Now, I don't know how I could better sum up the situation than to say Spaulding simply didn't do anything; that is the kind of testimony they want to give us here. Counsel says 'He didn't tell anything because he didn't have his notes.' He was plenty willing to tell you Harold Lane wouldn't let him see Doris. Spaulding sold out in this thing for some reason. Thank God, we don't have to depend on his testimony."

Spaulding was a traffic officer assigned to the accident in suit. He did not interview the decedent's sister who was the only witness to the tragedy. He stated that her father had declined to permit him to interview her. Her father testified that he requested Spaulding to interview her. Mr. Spaulding's testimony disclosed

that he had been unable to secure the notes he had made at the time of his investigation of the case and more than a year had elapsed before he was called to testify. These circumstances tend to explain his apparently ineffectual investigation.

Upon objection being made to counsel's statement that Spaulding had sold out, the trial court instructed the jury to disregard any remark based upon an assumption or conclusion that witness "sold out" for a valuable consideration.

We think that no reversible error was committed in respect to the argument of plaintiff's counsel as above outlined.

■ The third assignment of error is based upon the court's refusal to give the following requested instruction:

"If you shall find from the evidence in this case that as defendant Mark Odom Hatfield was proceeding along the Skyline road toward the City of Salem, that Alice Marie Lane was at or near the mail box of her father, Harold Lane, and was in a place of safety and was concealed from the view of the driver of the approaching automobile, and that said Alice Marie Lane suddenly and without warning ran from her place of safety and concealment and into the path of said automobile, and in such close proximity thereto that the driver was unable to avoid striking said child, then I instruct you that the plaintiff can not recover in this case."

There is no evidence in the record that decedent was concealed from the view of the driver of the approaching automobile or that decedent suddenly and without warning ran into the path of said automobile.

No error was committed by the trial court in declining to give the requested instruction.

■ Defendant's fourth assignment of error is based upon the refusal of the trial court to give the following requested instruction:

"I instruct you that the defendant Mark Odom Hatfield, in operating said automobile was required to keep a reasonable lookout. When the driver of an automobile on the public highway does not see children in or near the roadway in such a position that their childish impulses may reasonably be expected to place them in danger from passing automobiles, and there are no special facts or circumstances known to the driver, or which ought to be known to him in the exercise of a reasonable lookout, which would put an ordinarily prudent man on notice that children are, or are reasonably to be expected to be, in or near the roadway at a particular place, the driver is not chargeable with negligence merely because he does not anticipate that a child will or may step, or run out, into the road at that place in front of his automobile, and does not decrease his speed or increase his vigilance and care accordingly. In such a case until he sees or ought to have seen the child, his permissible speed is no less, and the degree of care and vigilance owed by him is no greater in a case in which a child is involved than in a case in which an adult is involved."

The only evidence in the case on the subject discloses that in the exercise of reasonable care, the driver of the automobile in suit ought to have seen decedent as she was crossing the highway ahead of him.

No error was committed in refusing to give the requested instruction last above quoted.

The fifth and seventh assignments of error present but one proposition of law and will be considered together.

■ The sixth assignment of error is based upon the omission from the court's instruction concerning defec-

tive brakes of the provisions of the statute concerning brake testing. When defendants' exception to this instruction was taken, the attorney taking it merely stated that under the instructions as given by the court to the jury ''there is no limitation as to brakes being reasonably adequate to stop the car within a reasonable space of time,'' and referred to a case reported in 146 Oregon at page 422.

The instruction given by the court is as follows:

''Every motor vehicle other than a motorcycle, when operated upon a highway, shall be equipped with brakes adequate to control the movement of and to stop such vehicle.''

The statement of counsel taking the exception did not add anything pertinent to the record unless consideration be given to a citation to a volume and page of the Oregon reports. Enjoining adequacy of control of movement and of stopping the vehicle is in effect saying that the brakes should be reasonably adequate to stop the car within a reasonable interval of time. We think it should not be required of a trial judge to send for a volume of the Oregon reports in order to find out what counsel means when he merely refers to a certain page of such volume in taking an exception to instructions to the jury. The legal point involved should be plainly stated and not merely suggested by such a reference.

█ A careful consideration of defendants' fifth and seventh assignments of error leads to the conclusion that error was committed by the trial court in neglecting to limit plaintiff's recovery to the amount which the estate of decedent would comprise if decedent had not been killed as here narrated. Her estate would be entitled only to the accumulation of money and other

property derived from her services, earnings, investments and savings during the period of her life subsequent to the time when she attained the age of majority.

■ At best, whether determined by a jury, or by the court without a jury, there is much speculation attendant upon fixing the amount due to plaintiff.

Section 3 of Article VII of the Constitution of Oregon, however, provides:

"Either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal."

The record was made up in that way in this case. It is also provided in said section 3 of Article VII, that—

"If the Supreme Court shall be of the opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial." Vol. 9, O. C. L. A. p. 224.

Under the foregoing constitutional provision, we feel justified in affirming the judgment of the circuit court in this case. In this we are actuated by a desire to terminate this litigation. It will be noted that the cause of action arose more than three years and five months ago. The original complaint was filed only three months and eight days after the cause of action arose. We are not reflecting upon any one because of this delay and mention it only as one reason why we are thus finally disposing of the case.

We are also influenced by reason of the speculative nature of appraising the damages in a case of this character. No one knows or can know when, if at all,

a seven year old girl will attain her majority for her marriage may take place before she has become twenty-one years of age. Section 63-502, Vol. 5, O. C. L. A. p. 39. Moreover, there is much uncertainty with respect to the length of time anyone may live. A similar uncertainty veils the future of a minor's earning capacity or habit of saving. Illness or a nonfatal accident may reduce an otherwise valuable and lucrative life to a burden and a liability.

The rule, that the measure of recovery by a personal representative for the wrongful death of his decedent is the value of the life of such decedent if he had not come to such untimely end, has been termed vague, uncertain and speculative if not conjectural. It is, however, the best that judicial wisdom has been able to formulate.

With the record before us in this case, we feel that this court is in a position as favorable as that of a jury properly instructed to determine the amount to be awarded plaintiff herein.

The record discloses that decedent was in good health, although having suffered the ills common to childhood. It appears that she was mentally bright having a grade of from 90 to 100 in all of her studies in the first grade entitling her to promotion to the second grade. Her teacher, Miss Florence Berndt, testified as to decedent's disposition, in regard to getting along with other children, that—

"She was very well identified socially. She was just a little sensitive at times, but she was a natural leader among the youngsters, they liked her,—she was very well liked by the other youngsters."

Miss Berndt also testified that deceased was "very dependable".

To the extent that a seven year old girl's life could do so, decedent's life, as shown by the testimony, supports the conclusion that decedent was active, alert and gave promise of a successful and commendable fruition.

A somewhat extended review of cases from other jurisdictions impels us to refer to the following decisions: *Klonowski v. Crescent Paper Box Mfg. Co.*, 217 Ill. App. 150; *Louisville and N. R. Co. v. Hobbs*, 188 Ky. 291, 221 S. W. 539; *Voohaar v. W. M. Whitney & Co.*, 170 N. Y. Supp. 674; *Shiembob v. Ringling*, 115 Conn. 62, 160 A. 429; *Petrovic v. City of Chicago*, 251 Ill. App. 542; *Bade v. Nies*, 239 Mich. 37, 214 N. W. 170; *Ramirez v. Chicago B. & Q. R. Co.*, 116 Neb. 740, 219 N. W. 1; *Smiley v. Reid Ice Cream Corporation*, 5 N. J. Misc. 82, 135 A. 504; *Cincinnati Traction Co. v. Schmidt*, 22 Ohio App. 413, 153 N. E. 274; *Yellow Cab Co. v. Gattuso*, 11 Tenn. App. 109; *Garis v. Eberling*, 18 Tenn. App. 1, 71 S. W. (2d) 215; *Black v. Peerless Elite Laundry Co.*, 113 W. Va. 828, 169 S. E. 447; *White v. L. Bernstein & Sons*, 123 Conn. 300, 194 A. 523; *Keenan v. Lawyers Mtg. Co.*, 165 Misc. 869, 300 N. Y. S. 1207; *Jordan v. Smyk*, 262 App. Div. 414, 29 N. Y. S. (2d) 62; *Rea Construction Co. v. Lane*, 25 Tenn. App. 125, 152 S. W. (2d) 1033; *Goodrich v. Sprague*, 314 Ill. App. 671, 42 N. E. (2d) 337; *Gorham v. Cohen et al.*, 102 Conn. 567, 129 A. 523; *Mulvihill v. Detroit United Ry.*, 231 Mich. 123, 203 N. W. 949; *Lenth v. Schug*, 226 Iowa 1, 281 N. W. 510.

It will be noted by those who trouble themselves to read the above cited cases that only one indicates that $5,000 is excessive in such a case as this. That one is *Lenth v. Schug, supra.* It is a decision by the Supreme Court of Iowa and contains a citation to eight other Iowa cases. There the award of $6,000 by the jury was

reduced to $4,500. The eight cases there cited to this point are:

1. *Allen v. Des Moines Ry. Co.*, 218 Iowa 286, 253 N. W. 143. The verdict in this case awarded $5,750 damages for the death of an eight year old boy. The supreme court reduced the award to $4,500.

2. *Eginoire v. Union County*, 112 Iowa 558, 84 N. W. 758. For the death of a girl eight years of age, by reason of a defective county bridge, a verdict against the county for $3,500 was reduced by the trial court to $2,500, which was affirmed by the supreme court.

3. *Hively v. Webster County*, 117 Iowa 672, 91 N. W. 1041. For the death of a boy four years and four months of age, the jury awarded damages in the sum of $6,000. The supreme court reduced the amount to $3,000.

4. *Farrell v. Chicago R. I. & P. Ry. Co.*, 123 Iowa 690, 99 N. W. 578. The jury returned a verdict for $3,500 for the death of a girl eight years and one month old. The trial court reduced the award to $3,000 and the supreme court affirmed the judgment.

5. *Ellis v. Republic Oil Co.*, 133 Iowa 11, 110 N. W. 20. The jury returned a verdict for $4,000 for the death of a girl fifteen years of age. The sum of $1,000 was remitted therefrom. The supreme court affirmed the judgment.

6. *Crawford v. McElhinney*, 171 Iowa 606, 154 N. W. 310, Ann. Cas. 1917E, 221. The jury awarded $4,000 for the death of a girl about eight years of age. The trial court reduced the award to $3,300, and the supreme court affirmed the judgment.

7. *McDowell v. Interstate Oil Co.*, 212 Iowa 1314, 237 N. W. 456. The jury returned a verdict in favor of plaintiff in the sum of $4,800. The decedent was a

seven year old boy. The trial court reduced the award to $3,500. The supreme court affirmed the judgment.

8. *Raines v. Wilson*, 213 Iowa 1251, 239 N. W. 36. A verdict and judgment for $3,500 on account of the wrongful death of a girl, a trifle over six and one-half years of age, was affirmed.

Referring to the annotation in Vol. 48 A. L. R. at page 842, et seq., we find a citation to the following named cases from New Jersey and Wisconsin wherein awards have been reduced to sums less than $5,000:

*Genatt v. Bentz*, 4 N. J. Misc. R. 375, 133 A. 75. The decedent was a boy nine years two months old, and the award of $10,200 was reduced to $3,500.

*Hoar v. Public Service Electric Co.*, 4 N. J. Misc. R. 716, 134 A. 184. For the wrongful death of a boy slightly under seventeen years of age, in a per curiam opinion, the award of $5,500 was reduced to $4,000.

*Brew v. Davidson*, 3 N. J. Misc. R. 434, 128 A. 613. The decedent was a boy four years, eight months and ten days old. In a per curiam opinion, the award of $5,000 was reduced to $3,000.

*Amabile v. Crane et al.*, 5 N. J. Misc. R. 149, 135 A. 692, dealt with a claim for damages on account of the death of a ten year old boy. In a per curiam opinion, an award of $5,000 was reduced to $4,000.

*Thomas v. Lockwood Oil Co.*, 178 Wis. 599, 190 N. W. 559. For the wrongful death of a boy eleven years and eight months old an award of $4,807 was reduced to $3,000.

We think, however, that the weight of authority and the better reasoning support the award made by the jury in the case at bar.

The judgment of the circuit court is affirmed.