HAROLD GARRIEPY vs. BALLOU & NAGLE, INC., ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 13th—decided December 15th, 1931.

*Joseph N. Manfreda,* with whom, on the brief, was *Jacob Belford,* for the appellant (plaintiff).

*M. Joseph Blumenfeld,* with whom, on the brief, was *David R. Woodhouse,* for the appellee (defendant).

HAINES, J. From the evidence presented the jury could reasonably have found that the defendant Ballou & Nagle, Inc., was located in Southington and engaged in the trucking business; that one of the trucks operated by the company was a Mack Bulldog truck and the defendant Weady, one of the company's drivers, had left New York City the morning of April 17th, 1930, with this truck, stopped in New Haven to make some deliveries, telephoned to the home office for instructions and was told to go to Wallingford and get a load of steel. Pursuant to these instructions he proceeded up State Street in New Haven, which is a direct route to Wallingford. About eleven-thirty a. m. as he approached the intersection of State and Lyman Streets he saw the plaintiff signalling for a ride; Weady and the plaintiff and the plaintiff's companion all lived in Wallingford and were acquainted; Weady, seeing the signal and recognizing these acquaintances, turned the truck toward the curb and applied the brakes for the sole purpose of bringing the truck to a stop in order to give the men a free ride to Wallingford. The truck was then moving about eighteen miles per hour and could not exceed that speed, being equipped with a governor set at that figure. At that time and place the traffic was light but the street was wet and slippery. Nothing

in the proper operation of the truck or in its speed or in the traffic conditions required the application of the brakes, and the sole purpose for which they were applied was to stop the truck and take on the plaintiff and his companion. The truck then weighed about fourteen thousand pounds and had a load of about two hundred pounds in addition. The company had issued specific orders to all its truck drivers, including Weady, forbidding them to take passengers on any of the company's trucks and the truck in question was labeled "No Riders" for the specific purpose of avoiding possible liability in the event of accident and injury to riders. All of the trucks were adequately manned so that it was unnecessary to resort to gratuitous passengers to assist in any way in the company's business. When Weady turned the truck to the right toward the easterly curb of State Street and applied the brakes, it skidded and swung the rear portion toward the right, striking plaintiff and causing the injuries complained of. The plaintiff claims that both Weady and the company were responsible for the negligence of the former and the jury returned a verdict against Weady but did not hold the company responsible. The plaintiff appealed from this decision and from the refusal of the court to grant his motion to set aside the verdict.

The various assignments of error bear directly or indirectly upon the single controlling question, viz: Did the negligence of Weady take place in the performance of an act which was within the scope of or incident to his employment as the servant and agent of the company? The court submitted this question to the jury as a question of fact. The plaintiff claims that this was error and that upon the facts established, the court should have decided as a matter of law that the company was responsible and many cases are

cited in an endeavor to support this contention. Plaintiff also insists that upon the facts the jury could not reasonably and properly have found otherwise than that the company was responsible. The question in one form or another has been before this court in numerous appeals and the principles upon which it has been decided are well settled, but it is often a matter of extreme difficulty to apply them to the varying facts and circumstances which present themselves. Speaking generally, a principal must respond for the negligence of his agent where the latter acts upon the express or implied direction of the principal or where the act is done in the execution of the master's business, though unauthorized or even contrary to the instructions. *Loomis* v. *Hollister,* 75 Conn. 718, 722, 55 Atl. 561. In one of our early cases the rule is stated as follows: "For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions, the servant alone is responsible." *Stone* v. *Hills,* 45 Conn. 44, 47. Whether the agent was acting within the scope of his employment "is a question apart from whether he was engaged upon his employment at the time of the accident. Its decision involves consideration of whether it occurred within the time of the employment or not, and at a place, though outside the authorized course of the employment, which either as matter of law or as one of fact, could be regarded as an incidental or slight deviation, or if the deviation was substantial, whether it was so substan-

tial as to constitute it a complete departure, and the weighing of the extent and nature of the deviation, the surrounding facts which characterize and explain it, and the intention and purpose of its making." *Hickson* v. *Walker Co.*, 110 Conn. 604, 610, 611, 149 Atl. 400; *Butler* v. *Hyperion Theatre Co.*, 100 Conn. 551, 554, 555, 124 Atl. 220.

In driving up State Street to the point where he turned the truck with the intention of taking on the plaintiff and his companion, Weady was manifestly engaged in the business of the company. It is equally clear that when Weady turned his truck toward his acquaintances and put on the brakes, with the intention of stopping to take them on, he was acting in violation of specific instructions given him by the company, and that this was a deviation from his employment; but this does not necessarily free the master from responsibility, for a departure may be so slight that it is considered as merely incidental to the master's business. "Not every deviation of the servant from the strict execution of his duty, nor every disregard of particular instructions, will be such an interruption of the course of employment as to determine or suspend the master's responsibility. But where there is not merely deviation but a total departure from the course of the master's business, so that the servant may be said to be 'on a frolic of his own,' the master is no longer answerable for the servant's misconduct." *Ritchie* v. *Waller*, 63 Conn. 155, 162, 28 Atl. 29. To decide this question upon the facts of a given case, the trier "must take into account, not only the mere fact of deviation, but its extent and nature relatively to time and place and circumstances and all the other detailed facts which form a part of and truly characterize the deviation, including often the

real intent and purpose of the servant in making it."
*Ritchie* v. *Waller, supra,* p. 165.

In a given case this may present a question of law
for the court, but in by far the greater number of
cases where the question turns upon the mere extent
of the deviation from the strict course of the employ-
ment, it has been generally held to be a question of
fact for the jury. The test as to when the question
becomes one of law and when one of fact, has been
stated to be that where the deviation is slight
and not unusual the court may, and often will, de-
cide as a matter of law that the servant was
still executing the master's business, rendering the
master responsible. "In a deviation of this character
there is no abandonment of the employment, either
temporary or permanent, merely a lapse from, or a
cessation or suspension of the employment while the
relation of master and servant continues during the
slight interruption of its fulfilment." *Greenberg* v.
*Lotz Asbestos Corporation,* 109 Conn. 441, 446, 146
Atl. 834. Where the deviation is very marked and
unusual, the court will also determine the question as
a matter of law and hold that the servant was not on
the master's business at all, but on business of his own.
However, where the circumstances do not clearly
bring the case within one or the other of these two
classes, but it falls between these extremes, it will be
regarded as involving merely a question of fact to be
left to the jury for decision. *Ritchie* v. *Waller, supra,*
p. 161. As was said in another case, if the facts and
circumstances are such as to make the issue so doubt-
ful that the trial court might, not unreasonably, con-
clude either that the departure was slight and not
unusual, or was marked and unusual, the case should
be submitted to the jury for decision as a question of
fact. *Loomis* v. *Hollister, supra,* p. 724; *Schrayer* v.

*Bishop,* 92 Conn. 677, 679, 104 Atl. 349; *Perry* v. *Haritos,* 100 Conn. 476, 481, 482, 124 Atl. 44; *Hickson* v. *Walker Co., supra,* p. 611; *Barnes* v. *Cuzuina,* 111 Conn. 335, 337, 149 Atl. 850.

Under all the circumstances of this case, the trial court properly left the question of degree of departure from the master's business to the jury as a question of fact. An examination of the charge satisfies us that the jury were correctly and sufficiently instructed upon the law and their verdict must stand, unless, upon the facts before them, it was so unreasonable, illogical or contrary to law as to require that the verdict be set aside by the court. The evidence showed that Weady violated his specific instructions in turning aside from his employment to take on gratuitous passengers. In doing so, he was obviously acting contrary to his duty and for his own purposes rather than those of the company. The business of the company upon which he was engaged required no stop at that time or place. The instructions which had been given to Weady were intended by the company to avoid incurring liability for injury by accident or otherwise to gratuitous riders. Turning aside from the master's business to take on such riders under these circumstances, could properly and reasonably be held by the jury to be outside the scope of the employment and not such a slight departure as to be merely incidental thereto, rendering Weady alone responsible for the plaintiff's injuries. We conclude that the verdict of the jury under all the circumstances of this case was a reasonable and logical one and that the trial court was not in error in refusing to set it aside. This renders it unnecessary to discuss the other assignments.

There is no error.

In this opinion the other judges concurred.