HENRY R. SHIEMBOB, ADMINISTRATOR, (ESTATE OF JOSEPH HABIGIER) *vs.* JOHN RINGLING ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 8th—decided May 10th, 1932.

*Ufa E. Guthrie* and *John M. Kelly,* of Wisconsin, for the appellants (defendants).

*William S. Locke,* with whom was *Aaron J. Palmer,* and, on the brief, *Ralph O. Wells* and *Saul Berman,* for the appellee (plaintiff).

AVERY, J.   After the trial, a verdict having been returned in favor of the plaintiff, the defendants moved to set it aside, and for arrest of judgment, and for judgment *non obstante veredicto*; and assigned error in the refusal of the court to grant these motions, and also in its refusal to charge in accordance with certain requests, in the charge as delivered, in certain rulings upon evidence, and also claimed the verdict was excessive.

From the evidence, the jury might reasonably have found the following facts:   July 5th, 1929, the defendants, as partners, were engaged in the operation of a circus, and were putting on a performance in Colt's Park, Hartford.   When the evening exhibition was about to commence, Joseph Habigier, the plaintiff's intestate, a boy twelve years of age, without a ticket of admission and without authority or permission of the defendants, attempted to enter the main tent by crawling under the side wall canvas.   While so entering, or having just entered, he was struck by an iron pin or bar thrown by William Keaton, employed by the defendants as a canvas man, whose duty, among other things, was to prevent unauthorized persons from entering the tents.   Keaton saw plaintiff's intestate enter the tent and, in pursuance of his duty to exclude unauthorized persons, threw an iron pin or bar at him for the purpose of preventing his further entrance and driving him out.   The tent pin thrown by Keaton struck plaintiff's intestate on the head, fracturing his skull, as a result of which he died.

The defendants maintain that because no witness testified to having seen the pin actually strike the deceased, the inference that he was so injured rests on speculation.   The defendants also claim it did not appear that Keaton, when he threw the pin, was aware of the presence of the child trespassing into the tent.

While no witness testified to having actually seen the pin strike the deceased, there was direct testimony as to the acts and movements of Keaton for some considerable time in driving out intruders endeavoring to get under the tent that evening; moreover, witnesses testified to having seen the deceased in the act of crawling under the tent flap, and having seen Keaton hurl a pin in his direction, and having observed the deceased thereafter run away. There was further testimony that when the boy arrived home shortly afterward, his head was bleeding profusely, and was much swollen, and he informed his mother that he had been hurt while trying to sneak into the circus, and that a man had thrown a bar at him. A doctor bandaged his head that evening, and, from the cut and swollen condition of his scalp, apprehended the presence of a fracture. The day following, a depressed fracture of the skull was discovered by a surgeon at the place where his head was swollen. He was operated on at the hospital, and following the operation he died that day from the fracture. The shape of the fracture was described as round and depressed, such as might well have been caused by a pin such as the witnesses described as having been thrown at the boy by Keaton. Under these circumstances, if the jury believed this evidence, it could hardly, with reason, have found otherwise than that the deceased was hit by a pin thrown by Keaton; and, from the entire evidence, no conclusion could have been reasonably reached other than that Keaton saw the boy crawling under the tent flap, and threw the pin to drive him out. The court did not err in refusing to set aside the verdict.

The principal ground claimed in the motion in arrest of judgment and for judgment notwithstanding the verdict is that the complaint was defective in failing to allege that the acts of the defendants, or their

servants, were wilful or wanton. The complaint alleged that the decedent's injury was due to the reckless and negligent act of Keaton, the case was tried throughout as one of negligence, and we treat it therefore upon the same basis. *New Haven Water Co.* v. *Russell,* 86 Conn. 361, 365, 85 Atl. 636. It is not necessary to allege the act as wilful or wanton. In this State, it is well settled that when the presence of a trespasser in a position of peril becomes known, the duty then arises of using ordinary care to prevent injuring him. *Kalmich* v. *White,* 95 Conn. 568, 571, 111 Atl. 845; *Salemme* v. *Mulloy,* 99 Conn. 474, 480, 121 Atl. 870; *Waselik* v. *Ferrie Construction Co.,* 114 Conn. 85, 87, 157 Atl. 642

The defendants filed requests to charge directed especially to two points: first, as to the duty resting upon the defendants toward trespassers; and, second, as to the responsibility of the defendants for the act of their servant Keaton. In regard to the duty resting upon the defendants toward trespassers, the court charged as follows: "It is admitted by the plaintiff that the plaintiff's decedent was a trespasser at the time of the alleged injury complained of. This, however, does not in any way affect the obligation of the defendants or of the defendants' employees to refrain from injuring the plaintiff's decedent. There is no distinction between the degree of care which should be exercised toward known trespassers and that which is owing to other persons. The original fault of the plaintiff's decedent in committing the trespass did not justify the omission of any precaution on the part of the defendants or their employees against injuring him if they had knowledge of his presence. There was no duty resting upon the defendants to use due care to have anticipated and to have discovered the presence of the decedent upon the

property lawfully occupied by them, nor were they under any duty to regulate their business conduct with a view to safeguarding trespassers. Neither were they required to have used care to have anticipated and discovered the presence of the decedent, because no one by doing a wrongful act can impose a duty upon another, but once having discovered his presence they owed him the duty to so refrain from injuring him as a reasonably prudent person would do. If you find that Keaton knew of the presence of the plaintiff's decedent and that the plaintiff's decedent was injured by the negligence of Keaton in throwing a bar or stake in his direction for the purpose of frightening him or others, then the mere fact that the plaintiff's decedent was a trespasser and was attempting to enter the tent without authority, is wholly immaterial. The owner or occupant of land owes the same duty to refrain from actively injuring a trespasser of whose presence he is aware as he does to refrain from injuring an invited person. The mere fact that the plaintiff's decedent was attempting to enter the tent without authority and that he was a trespasser does not of itself constitute contributory negligence and bar him from the right of recovery, but the negligent act of a trespasser, if it materially and essentially contributes to his injury, will prevent his recovery." This statement of the court was sufficient for the guidance of the jury upon this subject under the circumstances disclosed by the claims of the parties, and was in accordance with our law. *Kalmich* v. *White,* and *Salemme* v. *Mulloy, supra.*

It was the claim of the defendants that the employment of Keaton as a tent man was wholly outside of the tent; that he had no right or authority to go inside of the tent to repel trespassers; and that his act in going inside and throwing a tent stake at plaintiff's

decedent for the purpose of preventing the latter from entering, was so wholly without the scope of his employment, that the defendants were not liable for his act in so doing. That Keaton was a tent man was conceded at the trial. There was testimony from one of the defendants and other witnesses that part of his duty was to prevent trespassers from entering the circus tents. Upon the subject of the responsibility of the master for the acts of his servant, the court instructed the jury as follows: "The master is responsible for the acts of his employee done within the general scope of his employment while engaged in his master's business and with a view to the furtherance of that business, even though the act is done negligently. And if you find that one of the duties of Keaton was to repel trespassers from entering the tent, the fact that he attempted to do so from the inside, where he had no right to be, rather than from the outside, where he should have been, would be of no consequence. The defendants are responsible for the acts of Keaton if done within the general scope of his employment while engaged in the business of the defendants and with a view to the furtherance of their business, even though the acts done be done negligently and contrary to the express and explicit directions and orders of the defendants, and of course that has reference to the place where he was or should have been. If you find that the plaintiff's decedent suffered the injuries complained of while attempting without authority to enter the defendants' circus tent and that such injuries were caused by a tent pin or bar negligently thrown at him or in his direction by an employee of the defendants who was endeavoring to keep unauthorized persons out of the tent in accordance with his duties and that no negligent act of the plaintiff's decedent materially and essentially

contributed to cause his own injury, then you should find a verdict for the plaintiff for such amount as you may find proximately resulted as damages from such act of the defendants' servant, even though you find the plaintiff's decedent was a trespasser and even though you find that the act of Keaton was expressly or impliedly forbidden by the instructions given him by the defendants." This was an adequate statement of the law under the circumstances disclosed by the claims of proof. "A master is liable only for those torts of his servant which are done with a view of furthering his master's business within the field of his employment—for those which have for their purpose the execution of the master's orders or the doing of the work assigned to him to do. . . . An act done by a servant while engaged in his master's work, but not done as a means or for the purpose of performing that work, is not to be deemed the act of the master." *Turner* v. *American District Telegraph & Messenger Co.*, 94 Conn. 707, 713, 714, 110 Atl. 540: "When the servant is doing or attempting to do the very thing which he was directed to do, the master is liable, though the servant's method of doing it be wholly unauthorized or forbidden. 'If the servant's disobedience of instructions will exonerate the master, the proof, easily made, virtually does away with the maxim of *respondeat superior.*' " *Son* v. *Hartford Ice Cream Co.*, 102 Conn. 696, 700, 129 Atl. 778; *De Nezzo* v. *General Baking Co.*, 106 Conn. 396, 400, 138 Atl. 127; *Loomis* v. *Hollister*, 75 Conn. 718, 722, 55 Atl. 561. The court correctly instructed the jury that if they found that one of the duties of Keaton was to repel trespassers from entering the tent, the fact that he attempted to do so from the inside, even though he had no right to be there, rather than from the outside, where he was concededly authorized to be, would be of no conse-

quence. "In cases where a deviation is slight and not unusual, the court may, and often will, as matter of law, determine that the servant was still executing his master's business." *Ritchie* v. *Waller,* 63 Conn. 155, 161, 28 Atl. 29; *Garriepy* v. *Ballou & Nagle, Inc.,* 114 Conn. 46, 49, 157 Atl. 535.

After he was struck by the tent pin, the boy went home, was attended by a physician, had his head bandaged, and went with his father in a taxicab in an endeavor to locate the person who had inflicted the injury. The father was seen by a police officer to get out of the cab. The police officer was asked by the defendants on direct examination whether he had occasion to note whether the father of the boy was under the influence of liquor at that time. This question, which was clearly irrelevant to any issue in the case, was objected to and properly excluded.

The verdict was for $7500, which the court, on motion, reduced to $5000. The boy was twelve years old, strong and healthy. As to his mental powers, there is nothing to show they were above the average. In view of the evidence, we cannot say that the amount of the verdict, as reduced by the remittitur, is so excessive as to require action by this court. "To attempt to determine what is the economic value of the life that is ended so shortly after it has begun opens at best an almost illimitable field for the exercise of judgment, and the conclusion of the twelve individual minds which combine to make the verdict, fortified as here by the refusal of the trial judge to interfere, is not easily to be set aside." *Gorham* v. *Cohen,* 102 Conn. 567, 571, 129 Atl. 523.

There is no error.

In this opinion the other judges concurred.