ELLA CADWELL ET AL. *v.* RALPH WATSON

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 5—decided June 3, 1948

*Cyril Coleman,* for the appellant (defendant).

*Jacob Berman,* for the appellees (plaintiffs).

DICKENSON, J. This is an action for damages brought against a common carrier, by passengers of his taxicab, for personal injuries arising out of a collision between the cab and another car. The defendant has appealed from a judgment for the plaintiffs, assigning error in the denial of a motion to set aside the verdict and in the finding and charge.

From the evidence most favorable to the plaintiffs, the jury could have found the following facts: The collision occurred on the night of December 20, 1942, on Main Street in Willimantic, a heavily traveled highway which runs substantially east and west and

is a part of route 6 to Providence, Rhode Island. Main Street was icy and slippery, with snowbanks two or three feet wide on either side adjacent to the curb, and the temperature was well below zero. Shortly before midnight, the plaintiffs ordered a taxicab of the defendant to transport them from their residence to their place of employment. Francis Ryan also had telephoned for a taxicab, and George Freeman, the defendant's employee, drove his cab to Ryan's residence, picked him up, and then drove to the Cadwell house, where the plaintiff Ella Cadwell, her husband, the plaintiff Aldea Flynn and another passenger were taken into the cab. When Freeman arrived at Ryan's house, Ryan told him that he had ordered the cab for the purpose of pushing his car, which had stalled because of the low temperature. Freeman agreed to do this, but the plaintiffs did not know of the project. En route to the plaintiffs' place of employment, Freeman stopped the cab and then pushed Ryan's car with it for several hundred feet on Main Street. He then gave the car a sharp push so that Ryan might steer it into a filling station lot. Ryan was unsuccessful in this, Freeman backed the taxicab, and Ryan's car was maneuvered back onto the highway so that both vehicles were parallel to and about six feet from the curb and about three feet from the snowbank beside the curb, with the taxicab behind the Ryan car. Freeman got ready to push the Ryan car again with the taxicab when Henry Tetreault, driving a Cadillac car, approached from the rear at a rate of speed of ten to fifteen miles an hour. Tetreault saw the taxicab at a standstill but could not see the car ahead of it. He turned out to pass and then saw the Ryan car and that both cars were starting to move. At the same time he saw another car approaching from the

opposite direction, knew he could not get by the taxicab and Ryan's car in time to avoid collision, and "slammed on" his brakes. The front end of his car "slid over" and struck the rear mudguard of the taxi, causing the plaintiffs' injuries.

The defendant claims that the verdict should have been set aside for several reasons. He contends in the first place that the complaint alleges that the negligence of Freeman was in stopping the taxi at the point of collision, that it did not allege that the cars were in motion and that the plaintiffs cannot recover upon the theory that the taxicab and Ryan's car were in motion at the time of collision. The allegation in the complaint is that Freeman was negligent in stopping to push the Ryan car. It was broad enough to cover the point in question. *Huber* v. *Douglas, Inc.,* 94 Conn. 167, 183, 108 A. 727. Both the defendant and Freeman testified that the latter had been forbidden to use a taxicab to push other cars, and Ryan, called as a plaintiffs' witness, testified on cross-examination that Freeman had informed him of this fact. If we assume that the jury found the fact to be as the defendant claimed, this would not in itself, as the defendant contends, show that Freeman was acting outside the scope of his authority, for reasons which we hereafter state.

The defendant claims that the collision was caused solely by Tetreault's negligence and that Freeman's conduct was neither negligent nor a proximate cause of the collision. The defendant was a common carrier and as such was required to use the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities employed and the dangers naturally to be apprehended. *Peck* v. *Fanion,* 124 Conn. 549, 551, 1 A. 2d 143. The

Ryan car was directly in front of the taxicab and was hidden from Tetreault's view by it. The road was narrowed by the snowbanks and was icy. The juxtaposition of the two cars was unusual, and the jury could find that there was nothing unreasonable in Tetreault's conclusion that he had but one car to pass and that one stationary. They reasonably could find that Freeman failed to note the approach of Tetreault's car from the rear (see General Statutes, Cum. Sup. 1935, § 613c) and did not see the car approaching from the other direction because of the Ryan car. The jury could draw a fair inference that Freeman, in starting to push the Ryan car over the slippery road in the restricted space without ascertaining the approach of the other cars, failed to use the requisite degree of care for the safety of his passengers. His vision was blocked in part at least by the Ryan car, and his attention diverted from the approach of the car overtaking him. His conduct could reasonably have been found to have materially contributed to the collision. "The bus driver's negligence, if any, as between him and his passengers, is to be measured by his duty as a common carrier, not by his duty to other users of the road." *Washington* v. *Seattle*, 170 Wash. 371, 378, 16 P. 2d 597. There was no error in the denial of the motion to set aside the verdict.

The defendant's attack on the charge is premised by one on the finding by which we test it. *Mavrides* v. *Lyon*, 123 Conn. 173, 174, 193 A. 605. The finding in a jury case is "but a narrative of the facts claimed to have been proven by the parties, made for the purpose of presenting any claimed errors in the charge or rulings of the court." *Voronelis* v. *White Line Bus Corporation*, 123 Conn. 25, 27, 192 A. 265. Reasonable inferences drawn from the evidence are

proper bases for claims of proof. See *Carlson* v. *Connecticut Co.*, 95 Conn. 724, 728, 112 A. 646; *Marley* v. *New England Transportation Co.*, 133 Conn. 586, 591, 53 A. 2d 296. The defendant contends that the plaintiffs' claims "are so highly colored as not to reflect the evidence." His specific contention is that the evidence did not justify claims of proof that Freeman was primarily engaged in his master's business and had created an unusual hazard while so engaged. They were justifiable claims and we find no error in including them in the finding.

The attack on the charge, as pursued in the defendant's brief, in substance is that, contrary to his requests, the trial court failed to point out to the jury that it was proper on the evidence for them to find that Freeman had temporarily suspended his activities as a servant of the defendant and was engaged in doing a favor for Ryan in pushing his car. The defendant's claims of proof relative to this situation were that when Ryan telephoned for the cab he did not disclose his purpose of using it to push his car; that when Freeman arrived with the cab at Ryan's house Ryan disclosed this purpose and Freeman at first protested that he was forbidden to use the cab for that purpose but later agreed to, and did; that the defendant had instructed Freeman not to use any taxi to push or tow another vehicle; and that Freeman was acting outside the scope of his authority in doing so. The defendant assigns error in the charge dealing with the question whether Freeman, in pushing Ryan's car, had departed from the scope of his employment, and particularly in a portion of the charge in which the court said: "Whether an employee or servant is acting within the scope of his authority where, as here, there is no question of substantial deviation from his proper

route but only a question of disobedience in doing something forbidden by the employer in addition to, but not in substitution for, his regular duties, and while pursuing his regular duties, depends upon whether the servant is still primarily engaged in carrying out the duties for which he was hired, or whether he is primarily engaged in his own purpose."

The defendant's contention is that the court deprived the jury of the opportunity of finding that Freeman had temporarily suspended his activities as an employee of the defendant in order to do a favor to Ryan. The charge, if anything, was too favorable to the defendant. A common carrier is bound to exercise a high degree of care toward those who have put themselves under his care as passengers. His special duty begins when, in the act of entering his vehicle, the actual relation of passengers to carrier is assumed. *Vaughn* v. *Healy,* 120 Conn. 589, 592, 182 A. 166. "This rule applies alike to the character of the vehicle, . . . the skill and sobriety of the driver, and to the manner of conducting the [vehicle], under every emergency or difficulty." *Derwort* v. *Loomer,* 21 Conn. 245, 253; *Briganti* v. *Connecticut Co.,* 119 Conn. 316, 320, 175 A. 679. The passenger is entitled to protection against the misconduct or negligence of the carrier's servants while transacting the employer's business and when acting within the general scope of their employment, whether the act of the servant is one of omission or commission, and whether or not it has been forbidden by the master. *New Jersey Steamboat Co.* v. *Brockett,* 121 U. S. 637, 645, 7 S. Ct. 1039, 30 L. Ed. 1049; *New Orleans & Northeastern Railroad Co.* v. *Jopes,* 142 U. S. 18, 25, 12 S. Ct. 109, 35 L. Ed. 919; see *Butler* v. *Hyperion Theatre Co.,* 100 Conn. 551, 554,

124 A. 220. This is so even though the employee is not directly employed in carrying the injured passenger; *Hayne* v. *Union Street Railway Co.*, 189 Mass. 551, 553, 76 N. E. 219; and even though he has departed from authority conferred or implied, if in the course of his employment. *Palmeri* v. *Manhattan Railway Co.*, 133 N. Y. 261, 266, 30 N. E. 1001; 10 Am. Jur. 106; see also *Brennan* v. *Fair Haven & Westville R. Co.*, 45 Conn. 284, 296; *Son* v. *Hartford Ice Cream Co.*, 102 Conn. 696, 699, 129 A. 778, in effect overruling *Crocker* v. *New London, W. & P. R. Co.*, 24 Conn. 249, 265.

Freeman was at all times engaged in taking the plaintiffs to their agreed destination, although he paused on the way to try to assist Ryan. The trial court might have charged as a matter of law that he was acting within the scope of his employment. *Shiembob* v. *Ringling*, 115 Conn. 62, 69, 160 A. 429. The case is distinguishable on the facts from *Kuharski* v. *Somers Motor Lines, Inc.*, 132 Conn. 269, 43 A. 2d 777. There we were dealing with the conduct of the driver of a truck in stopping, contrary to orders, to take on a passenger; here we have duly accepted passengers of a common carrier on their way to their destination. Further, our statement in the *Kuharski* case (p. 274) that in permitting the passenger to board the truck the driver was, as a matter of law, acting outside of his employment was obiter dictum and contrary to our ruling in *Garriepy* v. *Ballou & Nagle, Inc.*, 114 Conn. 46, 51, 157 A. 535, where the rule is correctly stated.

The rules we have stated apply to taxicabs except in unusual cases. See *Carlton* v. *Boudar*, 118 Va. 521, 527, 88 S. E. 174; note, 96 A. L. R. 753; 37 Am. Jur. 598. "The operation and management of the taxicab is committed exclusively to the driver whom

[the passenger] finds in charge. . . . In short, [the passenger] has a right to rest secure in the belief that he is in the hands of a competent driver freed from individual responsibility for the safe and proper management of the taxicab." *Scales* v. *Boynton Cab Co.*, 198 Wis. 293, 294, 223 N. W. 836.

There is no error.

In this opinion MALTBIE, C. J., BROWN and ELLS, Js., concurred.

JENNINGS, J. (dissenting). Even if negligence and agency are assumed, I am unable to see how the conduct of Freeman can be said to have been a substantial factor in causing the plaintiffs' injuries. Both Freeman and Ryan had a right to be where they were. It is true that if Freeman had not been pushing Ryan he might not have been there, but, as was said in *Smithwick* v. *Hall & Upson Co.*, 59 Conn. 261, 269, 21 A. 924: "And so too if he had never been born, or had remained at home on the day of the injury, it would not have happened; yet no one would claim that his birth or his not remaining home that day, can in any just or legal sense be deemed a cause of the injury." It seems to me that the principles enunciated in *Mahoney* v. *Beatman,* 110 Conn. 184, 195, 147 A. 762, and in *Kinderavich* v. *Palmer,* 127 Conn. 85, 89, 15 A. 2d 83, require a holding that, as a matter of law, the conduct of Freeman was not a substantial factor in causing the injuries. I think the verdict should have been set aside on this ground.