STATE OF CONNECTICUT *v.* JAMES BUTEAU

MALTBIE, C. J., BROWN, ELLS, DICKENSON AND ALCORN, JS.

Argued July 12—decided August 16, 1949.

*Philip R. Pastore,* special public defender, and *William T. Holleran,* assistant special public defender, for the appellant (defendant).

*Abraham S. Ullman,* state's attorney, with whom was *Arthur T. Gorman,* assistant state's attorney, for the appellee (state).

MALTBIE, C. J.   The defendant was found guilty of murder in the first degree and has appealed to this court.   The state claimed: On October 25, 1946, the manager of a store in Meriden, James A. Leach, was killed.   The defendant and Albert Berard had entered the store just before closing time with the intent to secure the proceeds of that day's sales; they concealed themselves on a lower floor near a rear door until it was locked; they then proceeded to a room on an upper floor where they found Leach; both men were armed; when Leach started to call for help, both men shot, and four bullets struck him; and these bullets came from two different revolvers.   The defendant testified before the jury in his own behalf.   He did not claim to have proved that he had not participated in the events leading up to the shooting of Leach but did claim that the revolver he had with him was not loaded; that, while he knew Berard had a revolver in his hand while going to the upper floor, he did not know whether it was loaded; and that while he was still on the stairway Berard entered a room at its top, and the defendant heard shots.   By reason of his participation in the

events leading up to the death of Leach, the defendant was, upon his own claims of proof at the trial, guilty of murder in the first degree, whether or not he was present at the actual shooting or in fact fired one of the bullets that struck Leach. *State* v. *Cots*, 126 Conn. 48, 59, 9 A. 2d 138.

Because of a conflict of interest between the defendant and Berard and because the public defender was representing the latter, the court appointed a special public defender to represent the defendant and ordered that the two be tried separately.

The defendant has assigned error in the denial by the trial court of his motion to set the verdict aside and in various matters occurring in the conduct of the trial. The principal claim of error in the latter category is the admission in evidence of his examination before the deputy coroner for New Haven County on August 30, 1947, and of a signed statement made by him in the office of the state's attorney on September 3, 1947, in both of which the defendant in effect confessed his participation in the affair, although maintaining that Berard alone shot Leach. The evidence was offered as a part of the state's case in chief, and had it not been admitted it may well have been that the defendant would not have testified. For that reason, the admission of the testimony, if erroneous, cannot be claimed to have been harmless. On the other hand, the defendant's testimony accorded with his claims of proof, stated above, and the trial court's refusal to set the verdict aside as against the evidence cannot be held to be erroneous.

When the state called the deputy coroner and started to question him as to the examination of the defendant before him, the defendant objected. Thereupon the jury were excused and the trial court heard evidence over a period of some days from numerous witnesses

as to the circumstances of the arrest of the defendant, his detention thereafter, and the making of the statements. It made a finding of facts which it found proven, upon the basis of which it admitted in evidence the examination and the signed statement. The defendant claims that we should ourselves examine the evidence offered and, regardless of any finding by the court, determine the admissibility of the examination and statement. In *State* v. *Palko,* 121 Conn. 669, 681, 186 A. 657, we held that it was error to exclude a confession as involuntary where the trial court based its ruling in part upon a reason not correct in law and nothing in the "undisputed evidence" indicated that it was involuntary; but in that case the record contained no finding of facts by the trial court and no question of the propriety of our consulting the evidence was raised. It is not the proper function of this court to find facts upon conflicting testimony; and for us to determine the admissibility of evidence where there is such a conflict might well result in prejudice to the defendant, because the trial court might find facts which we, because of such a conflict, would be unable to consider. Whether such evidence as was offered in this case should over objection be produced before the jury depends upon findings by the court of the surrounding circumstances made upon the basis of any evidence relevant to that issue produced before it. *State* v. *Willis,* 71 Conn. 293, 313, 41 A. 820; 3 Wigmore, Evidence (3d Ed.) § 861; 2 Wharton, Criminal Evidence (11th Ed.) § 594. In this case the trial court properly found the facts upon the basis of which it admitted the evidence. Its finding was open to attack on the same basis as any other findings it made. The defendant, while claiming that we should go directly to the evidence, seeks also to have certain of the trial court's findings stricken out and certain facts added.

We approach the question before us upon the latter basis. We do not, by following this procedure, deprive the defendant of any benefit he might have had from our adoption of the other method, because his attacks upon the trial court's finding have compelled us to read the evidence and consider all the claims he has advanced.

The defendant claims, first, that he was under illegal restraint and that either this fact in itself rendered the evidence inadmissible or it was inadmissible because it was the result of such detention; and secondly, that the examination and statement were not voluntary.

No purpose would be served by reciting in detail the facts found with such corrections as we must make in them. About 2:30 a. m. on August 23, 1947, certain police officers, acting under instructions of the commissioner of state police, found the defendant on a street in Meriden and brought him to the office of the commissioner in the headquarters of the state police in Hartford. There he was questioned, principally by the commissioner, for some two hours. About 4 a. m. the commissioner told him that he was under arrest for murder. At the close of the interrogation he was confined in a cell in the building. Early the next afternoon he was taken to the state police barracks at Bethany. On the way a stop was made at the home of the state's attorney for New Haven County, and the officers with the defendant were given a warrant, signed by the coroner for New Haven County, directing the arrest of the defendant and his detention at the barracks. The defendant claims that for several reasons the warrant was defective, but, as we shall point out later, we have no need to consider the question so raised. The defendant was confined at the barracks until August 30; he was interrogated by police officers from time to time; one day he was taken by police

officers to Meriden and in their company followed closely behind another group of officers whom Berard was guiding over the route which, apparently, he said he had taken on the night of the crime. On one occasion, while the defendant's sister was visiting him, he made a written statement in her presence; later that day he admitted for the first time that he had been in the store on the night of the crime. The next day he was taken by the officers to the state's attorney's office in New Haven, and, except for a time while he was taken to lunch at a public eating place, he was kept there from about 10 a. m. to 5:30 p. m.; and he was questioned from time to time and was confronted by Berard.

The next day, August 30, on order of the deputy coroner, the defendant was brought before him and the examination took place the admission of which in evidence is claimed by the defendant to have been erroneous. Before the examination the defendant was cautioned as to his constitutional rights, including his privilege not to testify, and he stated his willingness to do so. There were present at the hearing, in addition to the deputy coroner, his secretary, a state police detective and the county detective. At the conclusion of the examination the deputy coroner issued a warrant for the defendant's arrest and committal to the New Haven county jail. The warrant was in the customary form of that used by coroners. After its issuance the defendant was taken to Meriden and, accompanied by police officers, he traversed the route he claimed that he and Berard had taken the night of the crime to various points in the city and through the store. During the forenoon of September 3, 1947, the defendant was brought from the county jail to the Superior Court room in New Haven; in his presence the court made an order for the calling of a grand jury,

and on the statement of the defendant that he was in no position to employ counsel the court informed him that a competent, experienced attorney would be appointed to look after his interests, which was done. Thereafter, he was taken to the state's attorney's office and was questioned from time to time; when he indicated that he would like to change a statement he had previously made, Captain Carroll of the state police, who was present, said he would take a statement from him after they had eaten. He was taken to dinner in a public eating place where he ate food of his own choosing with a good appetite. Thereafter, in the state's attorney's office, between 8 and 10 p. m., he made the signed statement which is the other evidence the admission of which we are now considering. He was again warned of his rights and he said he was making the statement of his own free will. Carroll typed it but the defendant made some corrections in spelling and grammar.

At no time after his apprehension on August 23, 1947, was the defendant handcuffed or bound, roughly or cruelly treated or subjected to force or violence. He never asked for counsel; the most he ever said was that when the proper time came he expected the public defender to act for him. He was not threatened nor were any promises made or hope of favor extended to him. He never claimed that he was illegally confined. In fact, the examination of the evidence at the preliminary hearing which we have been compelled to make because of the attacks of the defendant on the trial court's findings convinces us that every consideration was shown to the defendant which one arrested for a first degree murder could have reasonably expected.

The claim of the defendant that the examination before the deputy coroner on August 30 and the signed

confession of September 3 are inadmissible is largely based upon the rule of the federal courts that confessions made while an accused is illegally detained are inadmissible. The latest application of that rule will be found in *Upshaw* v. *United States*, 335 U. S. 410, 69 S. Ct. 170, 93 L. Ed. 129, a decision in which a bare majority of the court concurred. All cases in the United States Supreme Court which have dealt with the rule have concerned confessions made to police officers, and we doubt very much that the federal courts would apply it to an examination made by a coroner in carrying out his statutory duty of investigating an untimely death; the only reasons upon which the rule can be justified, as stated in the dissenting opinion in the *Upshaw* case (p. 417), have little application to such an examination. Moreover, the claim that the defendant was under illegal detention at the time of the examination or when he made the confession on September 3 is extremely tenuous. As regards the former, the situation previous to his appearance before the deputy coroner can only be regarded as a remote circumstance. It was the duty of the coroner, or his deputy acting in his place, to inquire into the death of Leach, and in the process of that investigation the deputy coroner had the power to summon witnesses to appear before him to further that purpose; General Statutes, Rev. 1930, § 255 (Rev. 1949, § 485); and he had authority to require the presence of police officers during his inquiry. Rev. 1930, § 256 (Rev. 1949, § 486). He could have issued a subpoena which would have brought the defendant before him, and if instead he could secure his attendance by a request that the police officers bring him it is difficult to see why his appearance there was less lawful than if the formal process of a subpoena had been issued.

After the hearing, the deputy coroner issued a war-

rant for the arrest of the defendant and his detention at the county jail. This he had authority to do. Rev. 1930, § 255 (Rev. 1949, § 485). The warrant so issued superseded that previously issued by the coroner. See *State* v. *Chin Lung*, 106 Conn. 701, 720, 139 A. 91. There is no requirement in the law that, as the defendant claims, a coroner's warrant shall contain any provision as to the release of the person arrested upon the giving of bail or, as incident thereto, a statement that the coroner is of the opinion that the person charged was guilty of a capital offense and that the proof against him is evident or the presumption great; the matter of the taking or refusal of bail follows upon the arrest and may be separately determined. The defendant was properly held thereafter under the warrant. When he made his confession on September 3, he had been brought that morning into the Superior Court for the very proper purpose of determining whether a special public defender should be appointed to represent him; and the most that can be claimed is that he was not promptly returned to the jail but was kept in the courthouse until he himself expressed a desire to make a statement, and was then further detained until he and the police officer had gone to dinner and he had an opportunity to make it. Neither the constitution of the United States nor the constitution of Connecticut requires that one arrested for a crime shall be promptly taken before a committing magistrate; all they provide is that he shall have the right to "a speedy and public trial"; U. S. Const. Amend. VI; Conn. Const. Art. 1 § 9; and the requirement in effect in the federal courts that one arrested shall be promptly presented before a "committing magistrate" is the result of a rule they follow. *Upshaw* v. *United States*, 335 U. S. 410, 411, 69 S. Ct. 170, 93 L. Ed. 129. A coroner is undoubtedly a "committing magistrate." The defendant was ar-

rested on August 23; the investigation thereafter was diligently pursued; and his presentation before the deputy coroner on August 30 could not be held, as matter of law, to have been unreasonably delayed.

But whether or not he was being held in unlawful detention at the time of the examination or when he made the statement of September 3 is not determinative of this case. The rule followed in the federal courts is not obligatory upon state courts, as has been stated by the Supreme Court of the United States in *Townsend* v. *Burke,* 334 U. S. 736, 738, 68 S. Ct. 1252, 92 L. Ed. 1690, as was pointed out by us in *State* v. *Zukauskas,* 132 Conn. 450, 458, 45 A. 2d 289, and as has been held by other state courts. *Upshaw* v. *United States,* supra, 434, note 29. Our rule, as stated in the *Zukauskas* case, supra, 459, is that the fact of illegal detention at the time a confession is made does not render it inadmissible unless that fact is causally connected with the securing of the confession. The defendant asks us, as did the defendant in the *Zukauskas* case, to review the rule in the light of the federal decisions and particularly that in the *Upshaw* case; but the opinions in that case, particularly that of the dissenting justices, confirm us in believing that our rule is the wiser and sounder. In the present case, the trial court was warranted in concluding that neither the examination before the coroner nor the statement of September 3 was the result of any illegal detention or of coercion, physical or psychological.

The trial court did not err in admitting in evidence the examination and the statement. There were present no such circumstances as have led the Supreme Court of the United States to hold in certain cases that the convictions of accused persons upon the basis of forced confessions they had made were in violation of the due process clause of the fourteenth amendment

to the United States constitution. *Brown* v. *Mississippi*, 297 U. S. 278, 56 S. Ct. 461, 80 L. Ed. 682; *Chambers* v. *Florida*, 309 U. S. 227, 60 S. Ct. 472, 84 L. Ed. 716; *Ashcraft* v. *Tennessee*, 322 U. S. 143, 148, 64 S. Ct. 921, 88 L. Ed. 1192; *Haley* v. *Ohio*, 332 U. S. 596, 68 S. Ct. 302, 92 L. Ed. 224.

The defendant sought to have certain rulings on evidence made during the preliminary hearing on the admissibility of his confessions included in the finding, but the trial court did not do so. He was entitled to have those rulings reviewed by us on the appeal and we have considered them. Neither in them nor in the rulings on evidence made before the jury which are assigned as error and pursued in the brief did the trial court commit any material error.

The defendant made several requests to charge, and he claims error in the refusal of the trial court to give some of them. His principal contention is that the court should have given certain instructions with reference to the issue whether the confessions made by the defendant were voluntary and whether they were the result of his illegal detention; and he also contends that the court should have given instructions he requested as to the credibility to be accorded the witnesses in the case, particularly two witnesses who to a certain extent participated at an earlier stage in the plan to commit the robbery but had no actual part in it. The trial court charged the jury at considerable length as to the confessions, summarizing much of the testimony which had been offered as to the circumstances leading up to and surrounding the making of them; it instructed the jury that they were to consider all such circumstances as had appeared in evidence and give such weight to the confessions as they considered they were entitled to; and it discussed the claim of the defendant that he had been illegally detained. The

court then called attention to the fact that the differences between the statements made by the defendant in the confessions and those made by him when testifying before the jury were minor and stated that the jury should be concerned only with those differences. With the concluding statement of the trial court we agree; none of the differences in any way derogated from the testimony of the accused which necessarily implicated him in the crime in a way to make his guilt equal to that of Berard, even though the jury found that the revolver he carried was not loaded and that he had not reached the room where Leach was killed before the actual shooting. The trial court also charged at considerable length as to the credibility to be accorded witnesses, particularly the two witnesses who had a part in the earlier planning of the crime. Though a meticulous comparison of the requests to charge with the charge discloses some respects in which the instructions might well have been amplified, we cannot find harmful error in the charge on this account in the light of the fact that upon his own testimony before the jury the defendant established his guilt of the crime with which he was charged.

The defendant has also assigned as error several passages in the charge. He took no exceptions to it at its conclusion and we are under no duty to consider these claims. Practice Book § 156. As the defendant was convicted of a capital offense, we have, however, reviewed the portions of the charge of which complaint is made to see whether substantial injustice was done, and we are satisfied that it was not. With reference to an argument made to the jury that they should reserve a verdict of guilty of first degree murder for the man who actually shot Leach, the trial court stated that in so far as it was addressed to the sympathies and emotions of the jury it was submitted without

comment, but that it did not state the law, and further that, notwithstanding the instructions previously given that it made no difference who actually shot Leach, they might find the defendant guilty of murder in the second degree or of a lesser crime than that charged. In these instructions the trial court gave to the defendant every advantage to which he was entitled. *State* v. *Chapman,* 103 Conn. 453, 484, 130 A. 899.

There is no occasion to consider the claimed errors in the finding of the claims of proof of the parties. A finding in a jury case merely serves the purpose of affording a basis for considering claims of error in rulings of the court or in its charge to the jury. *Cadwell* v. *Watson,* 134 Conn. 640, 644, 60 A. 2d 168; Conn. App. Proc. § 85. None of the corrections sought could materially affect such claims as the defendant made in this case.

With regard to the motion of the defendant to set the verdict aside he made the same claims as in his appeal from the judgment; we have held that his assignments as to these claims cannot be sustained; and there was no error in the refusal of the trial court to grant his motion on these grounds.

There is no error.

In this opinion the other judges concurred.