Edith DIXON, Plaintiff,

v.

STAMFORD TAXI, INC., George E. Spears and Geraldine Spears, Defendants.

Civ. A. No. B–84–538 (RCZ).

United States District Court, D. Connecticut.

April 9, 1987.

Philip M. French, Stamford, Conn., for plaintiff.

Dion W. Moore, Ronald D. Williams, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for defendant Stamford Taxi.

George C. Willis, Robert L. Danaher, Marsh, Day & Calhoun, Hartford, Conn., for defendants Spears.

## RULING ON PLAINTIFF'S MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR A NEW TRIAL

ZAMPANO, Senior District Judge.

On December 2, 1983, Edith Dixon, a fifty-three year old black woman and nurse's aide, called the Stamford Taxi Company and requested that a cab drive her to her place of employment. Jean Paul Friker, the operator of the taxi, picked Mrs. Dixon up at approximately 9:30 P.M. during the height of a severe snow and ice storm. At the time, five to six inches of snow and ice had accumulated on most of the streets in Stamford, Connecticut.

As Mr. Friker proceeded around a curve and down a rather steep hill on Cascade Road in the north end of Stamford, he lost control of the cab on the ice and snow, skidded off the road, and hit a tree. Several hundred feet before the impact area at the curve in the road was an official state "cautionary speed sign" indicating that the speed of a vehicle should be reduced to fifteen miles per hour. At the site of the accident, the speed limit was twenty-five miles per hour. Because Mr. Friker was no longer employed by the taxi company and was in "parts unknown" at the time of trial, his deposition testimony was admitted, indicating he believed he was travelling at between five to ten miles per hour when the cab swerved off the road. However, in answers to interrogatories under oath, the defendant stated the cab was moving at fifteen to twenty miles per hour at the time.

As a result of the accident, Mrs. Dixon suffered injuries to her leg, neck, eye, jaw and ribcage. She was treated the next day at the hospital and thereafter was unable to work for seven days.

While still recovering from her injuries on December 28, 1983, Mrs. Dixon slipped and fell on her head due to the snow and icy condition of the pathway leading to her apartment. Her landlord, George Spears, came upon the scene and drove her to the office of Dr. Dragan, who subsequently had her examined and treated at a local hospital. The next day, while being examined by Dr. Dragan, Mrs. Dixon suffered a grand mal seizure. This was the first time Mrs. Dixon had experienced a convulsion of any type. She was transported to a hospital where she was treated for sixteen days for head, lower back, neck and arm injuries. Mrs. Dixon testified that the fall resulted in certain new injuries and aggravated other injuries incurred in the taxi accident, preventing her from returning to work until February 1984.

As a consequence of the two accidents, Mrs. Dixon instituted one lawsuit against Stamford Taxi, Inc. for injuries received in the December 2nd incident, and against Mr. and Mrs. George Spears for injuries caused by the December 28th occurrence.

One would assume these rather uncomplicated negligence matters would proceed expeditiously to trial. However, inexplicably, the lawsuit has been obfuscated by dilatory, vexatious discovery procedures, inordinate delays, perplexing pretrial maneuvers, the imposition of sanctions upon counsel, a mistrial during jury selection,[1] and acrimonious exchanges among the trial attorneys.

At trial, plaintiff called seven witnesses, including an accident reconstruction expert who attempted to convince the jury that Mr. Friker committed one or more negligent acts in the operation of the vehicle. Except for one medical witness, the defend-

---

1. After several continuances, counsel finally assembled on October 22, 1985, to pick a jury. During the voir dire proceedings, plaintiff's attorney, in contravention of Court orders and the Federal Rules of Civil Procedure, indicated for the first time his intention to call two witnesses crucial to the plaintiff's case. The defendants, not surprisingly, moved to bar the witnesses' appearances. The Court, in the interest of justice, denied the defendants' motion, declared a mistrial, issued a scheduling order for the witnesses' depositions and, among other things, suggested plaintiff's attorney retain "co-counsel" with trial experience.

ants relied on cross-examination of plaintiff's witnesses to sustain their contentions. In the Court's opinion, defense counsel's cross-examination of plaintiff's expert was particularly devastating to plaintiff's cause, and cast a cloud over the credibility of all other aspects of plaintiff's presentation in both cases.

In response to special interrogatories, the jury determined that Mr. Friker was not negligent, thereby relieving Stamford Taxi, Inc. of liability, and that, although the defendants Spears were found to be negligent, such negligence did not cause the plaintiff's injuries, thereby also absolving the defendants Spears from liability. After verdict, plaintiff moved for judgment notwithstanding the verdict (judgment n.o.v.), or alternatively, for a new trial.

## I.

A request to interfere with and override a jury's fact finding conclusions calls for the exercise of extreme caution.[2] A court is "not free to review the evidence and set aside the jury verdict, merely because the jury could have drawn different inferences or conclusions or because [a judge feels] that other results are more reasonable." *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944); *see also Mattivi v. South African Marine Corp.*, 618 F.2d 163, 167–68 (2 Cir. 1980). On the other hand, a court has the power, and should not hesitate to exercise it pursuant to prudent judicial discretion, to reject a jury's findings in order to correct a miscarriage of justice and to preserve a party's right to a fair and just determination of the issues. *See, e.g., Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2 L.Ed.2d 953 (1958); *Cone v. West Virginia Pulp and Paper Co.*, 330 U.S. 212, 216, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947); *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2 Cir.1978); *Chiarello v. Domenico Bus Service, Inc.*, 542 F.2d 883, 885 (2 Cir.1976).

**2.** During the course of the past 23 years, this Court has been presented with a substantial

## A) JUDGMENT N.O.V.

■ To the extent plaintiff's post-trial "motion to enter default" on the issue of liability is construed to be an application for a judgment n.o.v., it must be denied because of plaintiff's failure to move for a directed verdict at trial, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Rule 50(b) mandates that only a party *"who has moved for a directed verdict* may move to have the verdict ... set aside and to have judgment entered *in accordance with his motion for a directed verdict"* (emphasis added). *See also Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814, 816–17 (2 Cir. 1970) (party's failure to move for directed verdict during trial bars consideration of motion for judgment n.o.v.).

## B) NEW TRIAL

Plaintiff's alternative motion for a new trial, however, may be considered by the Court despite her failure to request a directed verdict at trial. *Russo v. State of New York*, 672 F.2d 1014, 1022 (2 Cir.1982); *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 54–55 (2 Cir.1978).

■ After careful review of the evidence at trial, the Court is convinced that the jury's findings in favor of the defendant Stamford Taxi, Inc. and against the plaintiff reflect a distortion and misconstruction of the evidence, mandating a new trial to remedy the seriously erroneous verdict.

The defendant, as a common carrier for hire, had the duty to exercise the highest degree of care and vigilance to guard its passengers from all dangers which might reasonably be expected to occur in view of all the circumstances. The Supreme Court of Connecticut has characterized this rule as one that is "rigorous and imperative," requiring "the most perfect care," and imposing liability "for the smallest negligence." *Derwort v. Loomer*, 21 Conn. 244, 253 (1851). Thus, while the defendant was not an insurer of Mrs. Dixon's safety, its

number of similar applications, but recalls granting only one in a civil case.

driver was required to use the highest degree of skill to operate the cab safely, to maintain a reasonable speed under the existing weather conditions, to keep a proper lookout, and to have the vehicle under reasonable control at all times. *See, e.g., Pillou v. Connecticut Co.*, 143 Conn. 481, 483–84, 123 A.2d 470 (1956); *Cadwell v. Watson*, 134 Conn. 640, 643, 60 A.2d 168 (1948); *Bowes v. New England Transportation Co.*, 126 Conn. 200, 205, 10 A.2d 589 (1940). Applying these principles, it is difficult to conceive the basis for the jury's failure to find that the standard of care owed Mrs. Dixon was violated.

The Court is fully cognizant of Connecticut's rule that "skidding is not, in and of itself, evidence of negligence." *Lowell v. Daly*, 148 Conn. 266, 273, 169 A.2d 888 (1961). Yet in the present case, there were weighty and substantially uncontroverted facts that took the case well beyond a reasonable application of the "skidding and nothing more" principle of law. At the time of the accident, Mr. Friker was aware of the unusually hazardous conditions on Cascade Road. Moreover, he previously had travelled the road many times and was admittedly familiar with its narrowness, its many curves and steep hills, all of which were areas of danger requiring the exercise of great caution even without the extraordinary conditions of ice and snow. Mr. Friker's only explanation for the loss of control of the vehicle was that he had difficulty with his brakes and was unable to stop the cab on the ice and snow before it went off the road. In his deposition he stated he was travelling at five to ten miles per hour, but in sworn answers to interrogatories, the defendant conceded the cab was being operated at fifteen to twenty miles per hour. On a narrow, downhill road, covered with snow and ice, it is highly likely that any speed in excess of five miles per hour would be unsafe and unreasonable under the existing circumstances.

The jury's apparent refusal to infer negligence from Mr. Friker's failure to drive the cab at any but an exceptionally slow speed, his inability to operate the brakes properly, his lack of skill in proceeding downhill on ice and snow, and his improbable explanation for the loss of control of the cab—any one of which provides the "something more" to take the case outside the "skidding without more" rule—demonstrates that the verdict on the issue of liability so disregarded the credible evidence that it cannot stand. *See* Judge Friendly's penetrating and reasoned analysis of the "skidding without more" principle of law in *Evans v. S.J. Groves & Sons Company*, 315 F.2d 335, 341–46 (2 Cir. 1963).

In fairness to the jury, it should be noted that plaintiff, rather than relying on direct evidence, attempted to supply the "something more" component by calling an expert who, based on a series of hypothetical questions, expressed certain opinions to the jury. There is little question that the expert's testimony was illogical, convoluted, and unpersuasive. The jury's probable preoccupation with the lengthy expert testimony may well have clouded its perception and appreciation of the materiality of the cogent and undisputed evidence of defendant's negligence in the record. Although the jury had wide latitude in resolving conflicts in the testimony and in evaluating the evidence, it was not free to repudiate the objective, uncontroverted, and liability-producing facts in the instant case. Under these circumstances, judicial intervention to prevent a miscarriage of justice is warranted.

■ With respect to the verdict in favor of the defendants Spears, the jury determined that they were negligent in one or more respects, but concluded that their negligence was not a proximate cause of any injuries or losses to the plaintiff. There are no rational grounds for this conclusion. Without any doubt the plaintiff suffered *some* injuries and losses as a result of the fall including a concussion, lower back damage, doctor's bills, and lost wages. Thus, while the jury could exercise reasonable discretion as to the *amount* of damages, it was not free to deny the *exist-*

*ence* of damages caused by the defendants' negligence.

Concededly the jury's task in apportioning damages under the principles of "proximate cause" was not an easy one. Some of her injuries were caused solely by the fall; other injuries, suffered in the first accident, were aggravated by the fall. The jury's request to the Court to reread its "proximate cause" instruction confirms the probability of confusion and dilemma in the jurors' minds. With the advantage of hindsight, both the plaintiff and the Court should have been more helpful in guiding the jury on the question of apportionment of damages. Plaintiff's medical presentation could have been more explicit on the subject of new injuries versus overlapping injuries as a result of the second accident. The Court, on its part, should have acceded to plaintiff's request for detailed instructions to the jury which defined precisely the respective responsibilities, as between the two sets of defendants, for the injuries incurred by the plaintiff in the two accidents.

A new trial will enable the parties and the Court to expand upon, vis-a-vis direct and cross-examination of the witnesses and a more complete set of instructions to the jury, the issues of negligence, causation, and damages. Hopefully there will be an avoidance of the pitfalls which inadvertently, but surely, resulted in verdicts that failed to serve the ends of justice.

## II.

Accordingly, the jury's verdicts rendered in the above-entitled matters are set aside, and a new trial shall be scheduled on this Court's May 1987 trial calendar.